UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:03CV00278 (SRU) |
| THE CONNECTICUT DEPARTMENT OF PUBLIC UTILITY CONTROL, ET AL. | ) ) ) ) | |
| Defendants. | ) ) | OCTOBER 27, 2003 |

**THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY'S BRIEF IN REPLY TO OPPOSITION BRIEFS FILED BY THE DEPARTMENT OF PUBLIC UTILITY CONTROL, ET AL., AT&T COMMUNICATIONS OF NEW ENGLAND, INC. AND COX CONNECTICUT TELCOM, L.L.C., AND IN FURTHER SUPPORT OF ITS <u>MOTION FOR SUMMARY JUDGMENT</u>**

The Southern New England Telephone Company ("SNET") files this Brief in reply to the Opposition Briefs filed by the Department of Public Utility Control, et al. ("DPUC"), AT&T Communications of New England, Inc. ("AT&T") and Cox Connecticut Telcom, L.L.C. ("Cox"), and in further support of its Motion for Summary Judgment. To the extent arguments raised by the DPUC, AT&T and Cox are not specifically addressed in this Reply, these arguments are addressed in SNET's Briefs in Support of its Motion for Summary Judgment and in Opposition to the other parties' motions.

## THIS COURT HAS JURISDICTION

Any remaining argument over jurisdiction is surely decided by the DPUC's tacit admission in its October 3, 2003 Local Rule 9(c)2 Statement (Paragraph 1) that the decisions at issue in this case were made under 47 U.S.C. § 151 et seq., the Telecommunications Act of 1996 (the "1996 Act" or "Act"). Despite this admission and the myriad of bases for jurisdiction set forth in SNET's briefing, Cox and the DPUC continue to question jurisdiction. Cox and the DPUC now cite Puerto Rico Tel. Co. v. Telecomm. Reg. Bd. of Puerto Rico, 189 F.3d 1, 10 (1st Cir. 1999) to claim that jurisdiction under 47 U.S.C. § 252(e)(6) requires that there be a "substantial nexus" between the challenged agency action and an interconnection agreement. Oct. 3, 2003 Cox Connecticut Telecom L.L.C. Opposition Brief at ("Cox Opp'n Br. at __") 4; Oct. 3, 2003 Department of Public Utility Control, et al. Opposition Brief at ("DPUC Opp'n Br. at __") 10. Even assuming this requirement, there is unquestionably a "substantial nexus" here – the challenged action by the DPUC forces SNET to reduce the contracted for rate term in 56 interconnection agreements. See WorldCom, Inc. v. Conn. Dep't of Pub. Util. Control, 229 F. Supp.2d 109, 115 (D. Conn. 2002) (substantial nexus found where DPUC's determination affected rates in interconnection agreement).

This case therefore falls easily within the broad contours of 47 U.S.C. § 252(e)(6) jurisdiction and federal jurisdiction generally. See July 22, 2003 Memorandum of Law in Support of The Southern New England Telephone Company's Motion for Summary Judgment at ("SNET Br. at __") 10-12; Oct. 3, 2003 Opposition Brief of The Southern New England Telephone Company at ("SNET Opp'n Br. at __") 3-9. See also Puerto Rico Tel. Co., 189 F.3d at 10 (a "determination" under 47 U.S.C. § 252(e)(6) includes decisions about the rate within an

agreement). Regardless, this Court's original jurisdiction under 28 U.S.C. § 1331 is in no way compromised by any purported lack of jurisdiction under 47 U.S.C. § 252, a point not addressed by Cox or the DPUC. See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 642 (2002).[1]

Cox also argues that the Court's jurisdiction is limited to reviewing the DPUC's decisions under federal law and that there is no jurisdiction to review the decisions under state law. Cox Opp'n Br. at 7 and n.2 (citing to two cases in support and noting a split in the courts). In reality there is no split of authority because the majority of the courts hold that state agencies' findings of fact and application of state law are reviewable by a federal court. See, e.g., GTE South, Inc. v. Morrison, 199 F.3d 733, 745 (4th Cir. 1999); Southwestern Bell Tel. Co. v. Pub. Util. Comm'n of Tex., 208 F.3d 475, 482 (5th Cir. 2000); Mich. Bell Tel. Co. v. MFS Intelenet of Mich., Inc., 339 F.3d 428, 433 (6th Cir. 2003); US West Communications v. MFS Intelenet, Inc., 193 F.3d 1112, 1117 (9th Cir. 1999); Southwestern Bell Tel. Co. v. Brooks Fiber Communications of Okla., Inc., 235 F.3d 493, 498 (10th Cir. 2000); see also Southern New England Tel. Co. v. Dep't of Pub. Util. Control, ---F. Supp.2d---, 2003 WL 22273538, at *4-5 (D. Conn. Sept. 30, 2003) (distinguishing Puerto Rico Telephone Company and following majority of circuits) (copy attached). See also SNET Br. at 12 (standard of review). Thus, it is proper for the Court to review both the DPUC's actions under federal law and, to the extent necessary, its actions under state law.

---

[1] Because the DPUC's Opposition Brief essentially is a regurgitation of its prior brief, SNET relies on the arguments set forth in its Brief in support of summary judgment and Opposition Brief. For example, the arguments asserted by the DPUC on pages 11 through 16 of its Opposition Brief are entirely duplicative of the arguments that the DPUC previously asserted. These arguments are addressed on pages 9 through 22 of SNET's Opposition Brief.

## THE DPUC'S ACTS ARE PREEMPTED

That the defendants continue to have a fundamental misunderstanding as to the nature of the 1996 Act and the residual powers it left the states is exemplified by the following quote taken from AT&T's October 3, 2003 Opposition Brief ("AT&T Opp'n Br. at __"):

> Even if the DPUC's decision directing SNET to reduce its Connecticut Transfer Service ("CTTS") rates and to offer an alternative transit offering were somehow <u>inconsistent</u> with federal law, which it is not, the Department enjoys authority under the Act to impose interconnection requirements that go beyond those established under federal law.

AT&T Opp'n Br. at 2 (emphasis added). This is flat wrong. While the DPUC may have authority under the 1996 Act to impose additional requirements, there is no question that any additional requirements must not be <u>inconsistent</u> with the Act itself or as interpreted by the Federal Communications Commission ("FCC"). <u>See</u> 47 U.S.C. § 261(c); <u>Southern New England Tel. Co. v. Dep't of Pub. Util. Control</u>, 261 Conn. 1, 17 and 21-22 (2002) ("EPS").[2]

By regulating transit service, the DPUC has imposed additional requirements inconsistent with the FCC's decision not to regulate such services. Because the DPUC's authority now comes from federal law, its regulation of a service the FCC has chosen not to regulate is an act inconsistent with the 1996 Act. By so acting, the DPUC has increased regulation of telecommunications and otherwise interfered with the methods used and the choices made by

---

[2] Both the DPUC and Cox continue to claim that the issues actually decided in <u>EPS</u> are the same as the issues before this Court. <u>See</u> Cox Opp'n Br. at 6; DPUC Opp'n Br. at 7, 30. This claim is incorrect because the <u>EPS</u> decision did not include a determination of authority under Conn. Gen. Stat. §16-247b(b), nor was there a determination that that section was consistent with federal law. <u>EPS</u>, 261 Conn. at 28 ("The issue is whether the department's action was in excess of its statutory authority pursuant to §§ 16-247b(a), 16-247a and 16-247f(a)."); <u>id.</u> at 37 ("[T]he department's jurisdiction over the plaintiff's enhanced services . . . was not inconsistent with federal law."). It is therefore a mischaracterization to claim that "[t]he DPUC's exercise of authority under Conn. Gen. Stat. § 16-247b(b) [in this matter] should be upheld in light of the <u>EPS Decision</u> [because] the State Supreme Court construed the statutes relevant to this case and concluded that they are consistent with the 1996 Act and that the DPUC properly applied them." DPUC Opp'n Br. at 30.

the FCC to meet the goals of the 1996 Act. See Gade v. Nat'l Solid Waste Mgmt. Ass'n, 505 U.S. 88, 103 (1992).[3]

The defendants cannot minimize the impact the 1996 Act had on the states' authority to regulate, as the United States Supreme Court has made clear: "the question is not whether the Federal Government has taken the regulation of local telecommunications competition away from the States. With regard to matters addressed by the 1996 Act, it unquestionably has." AT&T Corp. v. Iowa Util. Bd., 525 U.S. 366, 378 n.6 (1999). Not surprisingly, AT&T and the other parties here have chosen to ignore the existence of that Supreme Court decision and instead rely on state and other federal decisions to claim that the Act merely shifted away "some authority" from the states. See, e.g., AT&T Opp'n Br. at 4. Ignoring the AT&T Corp. decision, however, does not change the fact that the authority the states have to regulate telecommunications now comes from the 1996 Act. AT&T Corp., 525 U.S. at 378 n.6.

Contrary to AT&T's claims, preemption is not limited to whether compliance with both the state and federal law would be impossible; rather, preemption analysis looks to whether compliance with both laws would be impossible or whether compliance with the state law would frustrate the purpose of the federal law. See AT&T Opp. at 5 (citing Motor Vehicle Manufacturers Ass'n of U.S., Inc. v. Abrams, 899 F.2d 1315 (2d Cir. 1990) for this proposition, but failing to include the second part of the analysis discussed at pages 1318 and 1323 of the decision). Here, federal policy is that transit is not a service subject to 47 U.S.C. § 251(c)(2) and in turn, not subject to the pricing limitations under § 252(d)(1). The pricing of transit service,

---

[3] AT&T comments on SNET's use of cases on "direct" or express conflict, ostensibly in an attempt to distinguish them from this matter (AT&T Opp'n Br. at 6). AT&T, however, conveniently disregards that these cases also stand for the proposition that the required consistency with federal law extends to instances where state law or action is impliedly preempted. See SNET Br. at 16-17.

therefore, is only subject to the market based standards of 47 U.S.C. §§ 201 and 202. See SNET Opp'n Br. at 23-32. The Final Decision stands as an obstacle to SNET's ability to price CTTS consistent with federal law under 47 U.S.C. §§ 201 and 202. See SNET Br. at 13-18; SNET Opp'n Br. at 23-32.

And because the DPUC's authority comes from the 1996 Act, it is afforded no deference under Chevron for its interpretation of whether its actions are consistent with federal law. See Southern New England Tel. Co., ---F. Supp.2d—, 2003 WL 22273538, at *5 (rejecting application of deference under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) to federal review of state commission decision); SNET Opp'n Br. at 30-31. Therefore, all of the DPUC's arguments premised on Chevron deference must fail.

Furthermore, the DPUC, again, makes the impermissible stretch that the FCC's decision not to regulate transit service is "permissive silence" that should be interpreted to mean transit is to be regulated at the discretion of the states. DPUC Opp'n Br. at 24. There is no "permissive silence" because the FCC has stated the federal policy for transit services.

In BellSouth,[4] the FCC addressed the very issue before this Court – a CLEC claim that transit service rates were excessive. BellSouth, 17 F.C.C.R. 25828, ¶ 155. The CLECs in BellSouth claimed that transit service was a required interconnection under 47 U.S.C. § 251(c)(2) and thus should be priced under § 252(d)(1). Id. at ¶ 154. The FCC rejected this claim and found that the FCC has not found transit service to fall under 47 U.S.C. § 251(c)(2) and, moreover, that the challenged market-based rates were proper. Id. at ¶ 155. This decision is consistent with the FCC's other opinions on transit services. See, e.g., SNET Br. at 13 (citing

---

[4] In re Application of BellSouth Corp., 17 F.C.C.R. 25828 (2002) (full citation in SNET's Brief at 14).

Local Competition Order (1996) – 47 U.S.C. § 251(c) only applies to traffic terminating on incumbent LEC's network), at 15 (citing Mountain Communications, Inc. v. FCC (2003) – transit traffic does not terminate on incumbent LEC's network); SNET Opp'n Br. at 24 (citing In re Petition of AT&T Communications of Virginia (2002) – FCC declines, "on delegated authority," to determine that transit falls under 47 U.S.C. § 251(c)(2) pricing), at 33 and n.13 (citing Triennial Review Order (2003) – the FCC's rules have not required incumbent LEC's to provide transiting).

Simply because the FCC has chosen not to extend its reach to transit service, however, does not mean that the states are at liberty to jump in and regulate and that by doing so, the states are ipso facto acting consistent with the 1996 Act. See, e.g., Bethlehem Steel Co. v. New York State Labor Rel. Bd., 330 U.S. 767, 774-75 (1947) ("It is clear that the failure of the [federal agency] to [act]" was "a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute."); Gade, 505 U.S. at 98-99 ("nonapproved state regulation of occupational safety and health issues for which a federal standard is in effect is impliedly preempted as in conflict with the full purposes and objectives of the [federal] Act."). Cf. Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977) (preemption is "compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure."). De novo review of the law reveals that the DPUC's actions are inconsistent with the 1996 Act. See, e.g., SNET Br. at 12-18, 21-22; SNET Opp'n Br. at 23-32.

Nor is this a case where the DPUC was permitted under the Act to use its "police power in the interval," prior to a formal ruling by the FCC. Cox Opp'n Br. at 10. Unlike the cases cited by Cox, the FCC here has not expressly directed or permitted the states to regulate transit

services prior to a formal ruling. See, e.g., Mich. Bell Tel. Co. v. MFS Intelenet of Mich., Inc., 339 F.3d 428, 433-36 (6th Cir. 2003) (FCC expressly permitted state to regulate ISP traffic pending formal ruling on issue and noted that such action was consistent with the 1996 Act); Southwestern Bell Tel. Co. v. Pub. Util. Comm'n of Tex., 208 F.3d 475, 483-84 (5th Cir. 2000) (same). In fact, the Supreme Court in Bethlehem Steel Co. rejected the type of argument now made by defendants:

> The state argues for a rule that would enable it to act until the federal board had acted in the same case. But we do not think that a case by case test of federal supremacy is permissible here. The federal board has jurisdiction of the industry in which these particular employers are engaged and has asserted control of their labor relations in general.

Bethlehem Steel Co., 330 U.S. at 776. In the absence of some direction by the FCC that regulating transit services is permissible and would promote the Act's policies, the DPUC is precluded from regulating CTTS. Indeed, it is one thing for the DPUC to "identify the policy underlying" the 1996 Act, but to "then run with it is a dangerous method of interpretation." Wisconsin Bell, Inc. v. Bie, 340 F.3d 441, 445 (7th Cir. 2003). The fact is that transit services like CTTS are not regulated.

## THE ADMINISTRATIVE RECORD CANNOT SUPPORT THE DPUC'S DECISIONS UNDER STATE OR FEDERAL LAW

Simply because the DPUC purportedly followed its "standard practice and procedures" here does not "ensure" fairness (Cox Opp'n Br. at 18) – certainly the Connecticut Supreme Court did not think so when it recently admonished the DPUC for its administrative failures. See EPS, 261 Conn. at 32-33.[5] Nor did the District Court of Connecticut find that the DPUC followed the

---

[5] Metro Mobile CTS, Inc. v. Dep't of Pub. Util. Control, No. CV91-0399860, 1992 Conn. Super. LEXIS 2316 (Conn. Super. July 24, 1992) (attached to Cox's Opp'n Br.) does not support the position that SNET was provided proper due process. In Metro Mobile, the court found no due process violation because the plaintiff failed

8

law when it recently held that the DPUC's failure to consider all relevant information was arbitrary and capricious. <u>Southern New England Telephone Co.</u>, ---F. Supp.2d---, 2003 WL 22273538, at *4.

In fact, the fundamental problem with the DPUC's decisions here stems directly from its failure to consider all the relevant information. Significantly, the DPUC retreated from its prior opinions approving, as in the public interest, this rate in each CTTS interconnection agreement. The DPUC determined that the rate for CTTS was excessive without considering all relevant information. For example, the DPUC argues that "[t]he terms, rates and conditions surrounding the arrangements carriers may have as an alternative to CTTS were irrelevant for the finding that there is <u>no sufficient number</u> of carriers to make transit service economical to the CLEC's." DPUC Opp'n Br. at 31 (emphasis in original). Two sentences in its Brief later, however, the DPUC claims that the Final Decision was supported by the finding that there was a large number of transit-like service providers. <u>Id.</u>

Though the DPUC relied on the testimony of Mr. Lafferty to support its findings on the issue of alternatives and rates, SNET was denied the ability to test his claims because it was not allowed to develop the record on these points. Irrespective, Mr. Lafferty's expert testimony was impeached by the simple fact that his client, Cox, ultimately direct connected 75% of its traffic formerly serviced by CTTS. <u>See</u> SNET Opp'n Br. at 33-35.

Evidence about the availability and nature of alternative services (for example, those used by PaeTec and Cox) is crucial to determine whether CTTS is necessary and to determine

---

to cite to any specific instance of harm or to any request on its part to develop the record. <u>Id.</u> at *8. In contrast, SNET has cited to instances where the DPUC failed to allow the record to be developed on critical facts. This failure led to decisions that did not consider relevant information and were contrary to the law.

whether the rate for CTTS is in the public interest, a barrier to entry, and excessive. Based on the evidence in the record, or lack thereof, the DPUC could not have answered any of these questions without acting arbitrary and capriciously.

## CONCLUSION

For the reasons set forth above and those more fully developed in its Brief in support of its motion for summary judgment and its Opposition Brief, SNET respectfully requests that the Court grant summary judgment in its favor on all counts of its Verified Complaint.

Dated at New Haven, Connecticut this 27th day of October, 2003.

>Respectfully Submitted,
>
>**THE PLAINTIFF,**
>**THE SOUTHERN NEW ENGLAND**
>   **TELEPHONE COMPANY**
>
>By _____
>   Timothy P. Jensen
>   Fed Bar No. ct 18888
>   TYLER, COOPER & ALCORN, LLP
>   205 Church Street
>   P.O. Box 1936
>   New Haven, Connecticut  06510-1910
>   Telephone:   (203) 784-8200
>   Facsimile:   (203) 789-2133
>   E-Mail:      jensen@tylercooper.com
>
>   Keith M. Krom ct 07745
>   General Attorney
>   The Southern New England
>   Telephone Company
>   310 Orange Street
>   New Haven, Connecticut  06510
>   Telephone:   (203) 771-2509
>   Facsimile:   (203) 771-6577
>   E-Mail:      keith.krom@sbc.com

Counsel for The Southern New England Telephone Company