UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE CONNECTICUT DEPARTMENT OF PUBLIC UTILITY CONTROL, ET AL.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 3:03CV00278 (SRU)<br>)<br>)<br>)<br>)<br>) OCTOBER 6, 2003 |

**SNET'S MEMORANDUM IN OPPOSITION TO MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT FILED BY THE DEFENDANTS AND INTERVENING DEFENDANTS AND IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.     OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    THE INTERIM AND FINAL DECISIONS ARE BASED ON FEDERAL LAW AND
       CREATE CLAIMS UNDER FEDERAL LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.    At Its Core, this Case is about the DPUC's Interpretation And
             Application Of Federal Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.    The DPUC's Alternate Theories Also Fail . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

             1.    The Court Does Not Lack Subject Matter Jurisdiction Over This
                   Case Under The Well-Pleaded Complaint Rule Or Otherwise . . . . . . . . . 9

                   a.    The DPUC's Argument Concerning The Well-Pleaded
                         Complaint Rule Is Contrary to Recent Supreme Court
                         Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                         i.    The DPUC's "Arising Under" Argument is Directly
                               Contradicted By Recent Supreme Court Authority . . . . . 10

                         ii.   The Well-Pleaded Complaint Rule Does Not Apply . . . . 13

             2.    SNET Does Not Rely On The Declaratory Judgment Act for
                   Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

             3.    This Court should Not Abstain From Exercising Jurisdiction
                   Under Burford . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                   a.    SNET Has Not Asserted Any Claim Under State Law,
                         And Therefore, The First Burford Factor Is Not Present . . . . . . . 18

                   b.    Congress Has Given The Federal Courts Exclusive
                         Jurisdiction To Review State Agency Rulings Concerning
                         Interconnection Agreements, And Accordingly, The
                         Second Burford Factor Also Is Not Present . . . . . . . . . . . . . . . . . 20

       C.    Cox's Jurisdictional Challenges Are Equally Untenable . . . . . . . . . . . . . . . . . . . 22

III.   THE DPUC ACTED OUTSIDE ITS LIMITED FEDERAL GRANT OF
       AUTHORITY WHEN IT RENDERED ITS DECISIONS . . . . . . . . . . . . . . . . . . . . . . . 23

       A.    The DPUC Does Not Have The Power To Regulate CTTS Under State Law,

i

Federal Law or the <u>EPS</u> Decisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

B.    The DPUC's Actions Are Not Immunized From Federal Preemption . . . . . . . . 30

IV.    THE DPUC COULD NOT HAVE DETERMINED FROM THE RECORD THAT CTTS RATES WERE EXCESSIVE BECAUSE THERE WAS NO EVIDENCE PRESENTED SHOWING THE COSTS OF SIMILAR SERVICES IN CONNECTICUT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

V.    THE CONTRACT CLAUSE ALSO PROHIBITS THE DPUC'S ACTIONS HERE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

A.    History Of The CTTS Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

B.    The DPUC's Finding That The Current CTTS Terms Are Not Discriminatory And In The Public Interest Precludes It From Now Impairing The CTTS Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

C.    The Required New Service Was Not Expected . . . . . . . . . . . . . . . . . . . . . . . . . 41

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## TABLE OF AUTHORITIES

<u>Cases</u>

<u>Allied Structural Steel Co. v. Spannaus</u>, 438 U.S. 234 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

<u>Antares Aircraft, L.P. v. Fed. Republic of Nigeria</u>, 948 F.2d 90 (2d Cir. 1991) . . . . . . . . . . . . . 4

<u>AT&T Communications of N.J., Inc. v. Verizon N.J., Inc.</u>, 270 F.3d 162 (3d Cir. 2001) . . . 8, 30

<u>AT&T Corp. v. Iowa Utils. Bd.</u>, 525 U.S. 366 (1999) . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5, 8, 32

<u>Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern'l Ltd.</u>, 968 F.2d 196 (2d Cir. 1992) . . . . . . . . 4

<u>Bell Atl.-Pa., Inc. v. Pennsylvania Pub. Util. Comm'n</u>, 107F.Supp.2d 653
    (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

<u>Bethphage Lutheran Serv., Inc. v. Weicker</u>, 965 F.2d 1239 (2d Cir. 1992) . . . . . . . . . . . . . . . 22

<u>Burford v. Sun Oil co.</u>, 319 U.S. 315 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

<u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984) . . 30 - 32

<u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976) . . . . . . . . 16, 17

<u>County of Alleghany v. Frank Mashuda Co.</u>, 360 U.S. 185 (1959) . . . . . . . . . . . . . . . . . . . . . . 17

<u>Deakins v. Monaghan</u>, 484 U.S. 193 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Energy Reserves Group, Inc. v. Kansas Power & Light Co.</u>, 459 U.S. 400 (1983) . . . . . . . . . . . 39

<u>Equip. Mfrs. Inst. v. Janklow</u>, 300 F.3d 842 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

<u>Feinson v. Conservation Comm'n of Newtown</u>, 180 Conn. 421 (1980) . . . . . . . . . . . . . . . . . . 35

<u>Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta</u>, 458 U.S. 141 (1982) . . . . . . . . . . . . . . . . . . 29

<u>Fleet Bank v. Burke</u>, 160 F.3d 883 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13 - 15

<u>General Motors Corp. v. Romein</u>, 503 U.S. 181 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>GTE North, Inc. v. Strand</u>, 209 F.3d 909 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . passim

<u>Henley v. Food and Drug Admin.</u>, 77 F.3d 616 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 35

Hines v. Davidowitz, 312 U.S. 51 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

MCI Telecomm. Corp. v. Bell Atl.-Pa., 271 F.3d 491 (3d Cir. 2001)
    cert. den., 537 U.S. 941 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8, 31

MCI Telecomm. Corp. v. N.Y. Tel. Co., 134 F.Supp.2d 490 (N.D.N.Y. 2001) . . . . . . . . . . 8, 31

Michigan Bell Tel. Co. v. MFS Intelenet of Mich., Inc., 16F.Supp.2d 817
    (W.D. Mich. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

New Orleans Pub. Serv. Inc. v. Council of the City of New Orleans,
    491 U.S. 350 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

Ohio Bell Tel. Co. v. ICG Telecom Group, Inc., 2000 WL 1469356
    (S.D. Ohio, Sept. 29, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Perry v. Dowling, 95 F.3d 231 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ray v. Atlantic Richfield Co., 435 U.S. 151 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 33

Sanitation and Recycling Indus., Inc. v. New York, 107 F.3d 985 (2d Cir. 1997) . . . . . 38, 39, 40

Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983) . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 14, 15

Southern New England Tel. Co. v. Dept. Pub. Util. Control, 261 Conn. 1 (2002) . . . . . . . passim

Southern New England Tel. Co. v. Dept. Pub. Util. Control,
    Civil Action No. 3:02CV1022 (D.Conn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Southern New England Tel. Co. v. Dept. Pub. Util. Control,
    No. CV 03-0519831-S . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Southwestern Bell Tel. Co. v. Connect Communications Corp., 225 F.3d 942
    (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Steel Co. v. Citizens for Better Environment, 523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . 23

Turner v. Perales, 869 F.2d 140 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

United States Telecom Assoc. v. FCC, 290 F.3d 415 (D.C. Cir. 2002) . . . . . . . . . . . . . 3, 30, 36

United States Trust Co. of New York v. New Jersey, 431 U.S. 1 (1977) . . . . . . . . . . . . . . 39, 40

iv

Verizon Md., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635 (2002) . . . . . . . . . . . . . . . . . . . . passim

Wisconsin Bell, Inc. v. Bie, 340 F.3d 441, 2003 U.S. App. LEXIS 16514 (7th Cir. 2003) . . . 2, 37

Worldcom, Inc. v. Connecticut Dept. of Pub. Util. Control, 229 F.Supp.2d 109
    (D.Conn. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Zablocki v. Redhail, 434 U.S. 374 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Statutes**

U.S. Constitution, Article I, § 10 (Supremacy Clause) . . . . . . . . . . . . . . . . . . . . . 2, 12, 14, 16, 20

U.S. Constitution, Article IV, Clause 2 (Contract Clause) . . . . . . . . . . . . . . . . . 2, 16, 36, 38 - 40

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 1658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

47 U.S.C. § 153(16) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

47 U.S.C. § 153(47) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

47 U.S.C. § 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 32, 33

47 U.S.C. § 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 32, 33

47 U.S.C. § 251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10, 22, 27

47 U.S.C. § 251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 23 - 26

47 U.S.C. § 251(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23 - 26

47 U.S.C. § 251(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23 - 26, 28

47 U.S.C. § 251(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

47 U.S.C. § 251(c)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

47 U.S.C. § 251(c)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

47 U.S.C. § 252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

47 U.S.C. § 252 (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 28

47 U.S.C. § 252 (d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 32, 33,

47 U.S.C. § 252(e)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

47 U.S.C. § 252(e)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Conn. Gen. Stat. § 4-183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Conn Gen. Stat. § 16-247a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 28

Conn. Gen. Stat. § 16-247b(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Conn. Gen. Stat. § 16-247b(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Conn. Gen. Stat. § 16-247f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28, 29

Conn. Gen. Stat. § 16-247f(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Agency Decisions**

In re Application of BellSouth Corp., 17 F.C.C.R. 25828 (2002) . . . . . . . . . . . . . . . . . . . . 25, 33

In re Application of MCI Telecommunications Corp. for Arbitration Pursuant to
    Section 252(B) of the Telecommunications Act of 1996,
    Docket No. 96-09-09 (Jan. 10, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Implementation of the Local Competition Provisions in the Telecommunications
    Act of 1996, 11 F.C.C.R. 15499 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

In re the Matter of Petition of AT&T Communications of Virginia Inc. Pursuant to
    Section 252(e)(5) of the Communications Act for Preemption of the Jurisdiction
    of the Virginia State Corporation Commission Regarding Interconnection
    Disputes with Verizon-Virginia Inc., 17 F.C.C.R. 27039
    (rel. July 17, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Report and Order on Remand and Further Notice of Proposed Rulemaking, Review of
    the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers,
    Docket Nos. 01-338, et al., FCC 03-36, 2003 FCC LEXIS 4697
    (Rel. Aug. 21, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 27, 32, 33

## I.    OVERVIEW

The Southern New England Telephone Company ("SNET") files this Brief in further support of its Motion for Summary Judgment and in Opposition to the Motions to Dismiss and for Summary Judgment filed by the Department of Public Utility Control, et al. ("DPUC"), AT&T Communications of New England, Inc. ("AT&T") and Cox Connecticut Telcom, L.L.C. ("Cox"). Little more than one year ago, the Connecticut Supreme Court admonished the DPUC for failing to apply "the necessary precision in its decisions." Southern New England Tel. Co. v. Dept. Pub. Util. Control, 261 Conn. 1, 32-33 (2002) ("EPS"). This federal action aptly demonstrates that the DPUC failed to take heed of this judicial warning.

SNET brought this action to challenge the DPUC's findings that SNET's Connecticut Transit Traffic Service ("CTTS") was a required interconnection service under § 251(c)(2) of the Federal Telecommunications Act of 1996 ("1996 Act" or "Act") and thus was regulated subject to the cost-based rate requirements of § 252(d). The DPUC's finding was wrong. The Federal Communications Commission ("FCC") chose not to regulate transit services like CTTS and that determination is dispositive here. By again failing to use the "necessary precision" in conducting this matter, the DPUC's Interim and Final decisions ("Decisions") are inconsistent with the 1996 Act – they are premised on misapplication of federal and state law and incomplete supporting factual evidence and act as an impairment to 56 private contracts.

The DPUC's failure to follow the law is critical because "the question . . . is not whether the Federal Government has taken the regulation of local telecommunications competition away from the States. With regard to matters addressed by the 1996 Act, it unquestionably has." AT&T Corp. v. Iowa Util. Bd., 525 U.S. 366, 378 n.6 (1999). And where there is "[a] conflict between state and federal law, even if it is not over goals, but merely over methods of achieving a

common goal, [it] is a clear case for invoking the federal Constitution's supremacy clause to resolve the conflict in favor of federal law." Wisconsin Bell, Inc. v. Bie, 340 F.3d 441, 443, 2003 U.S. App. LEXIS 16514, at *3 (7th Cir. Aug. 12, 2003) (copy attached at Tab A).

As a matter of law, summary judgment should be granted in SNET's favor on all counts of its February 13, 2002 Verified Complaint ("Verified Complaint" or "Compl."):

1. The Court has jurisdiction:

   a. The Decisions were based on the DPUC's construction and application of federal law.

   b. This case concerns United States Constitutional issues.

2. The DPUC had no authority to render the Decisions:

   a. The FCC determined that transit services like CTTS are not a type of interconnection subject to the cost-based rate restrictions in §§ 251 and 252 of the 1996 Act.

   b. The DPUC had no independent authority to contravene these federal directives and proscribe a lower rate for CTTS or require that SNET create a new transit service.

3. Any purported authority the DPUC had, it abused:

   a. The underlying administrative process proved to be an inadequate basis for the Decisions.

   b. Its actions violated the Contract Clause.

To hold otherwise would assume as a matter of law, as the DPUC does, that, "regulation by state of any type of interconnection is consistent with federal law." July 22, 2003

Memorandum of Law in Support of Motion for Summary Judgment by the Connecticut

Department of Public Utility Control, Donald W. Downes, Linda J. Kelly, Glenn Arthur, John

Betkoski, III and Jack Goldberg at ("DPUC Br. at __") 32 (emphasis added).  This position,

however, is at odds with the clear precepts of federal law which provide that incumbent local

exchange carriers like SNET must offer at cost-based rates only direct interconnection between

their networks and the networks of another carrier – not all interconnections.  See July 22, 2003

Memorandum of Law in Support of The Southern New England Telephone Company's Motion

for Summary Judgment at ("SNET Br. at __") 15-17; United States Telecom Assoc. v. F.C.C.,

290 F.3d. 415, 419-21 (D.C. Cir. 2002).  Indeed, the purpose of the Act was to reduce, not

increase, regulation.  AT&T Corp., 525 U.S. at 378 n.6.  By rendering the Decisions in this

matter and unnecessarily increasing regulation under the guise of promoting competition, the

DPUC has overstepped its regulatory authority.

## II.   THE INTERIM AND FINAL DECISIONS ARE BASED ON FEDERAL LAW AND CREATE CLAIMS UNDER FEDERAL LAW

This Court has jurisdiction to hear and determine this matter of federal law:

- 47 U.S.C. § 252(e)(6) provides statutory authority to bring suit in federal court to review the DPUC's determination made under the 1996 Act;

- The DPUC interpreted and used federal law as a basis to render its Decisions creating a federal question under 28 U.S.C. § 1331; and

- SNET has alleged preemption under Article IV, Clause 2 and violations of Article I, § 10 of the United States Constitution.

Indeed, the scope of a state agency's authority under the 1996 Act is "measured by federal, not

state law."  Southwestern Bell Tel. Co. v. Connect Communications Corp., 225 F.3d 942, 946-47

(8th Cir. 2000).  Alone or together, these bases provide this Court with subject matter

3

jurisdiction over this matter.

"In considering a motion to dismiss for lack of subject matter jurisdiction," the court

accepts "as true all material factual allegations in the Complaint." Atlantic Mut. Ins. Co. v.

Balfour Maclaine Intern'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992). In resolving "jurisdictional

fact issues," the court may refer to evidence outside the pleadings. Antares Aircraft, L.P. v. Fed.

Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991).

First and foremost, this case is not about preemption of a state statute. Rather, this case is

about the DPUC's interpretation of its authority under the 1996 Act and the related state law

premised on and empowered by the Act and its interpretation of whether its actions are consistent

with the Act. Like the issue supporting jurisdiction in Verizon, the issue here "turns on whether

the Act, or an FCC ruling issued thereunder precludes the [state]" from regulating CTTS.

Verizon Md., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 643 (2002). This case is about how the

DPUC is precluded from reaching beyond its limited federal grant of authority under the Act into

56 CTTS contracts negotiated at arms-length – contracts with rates already approved by the

DPUC.

The DPUC's and Cox's smorgasbord of defenses to jurisdiction warrant no consideration

because when the DPUC regulates under the auspices of the 1996 Act, it subjects itself to suit in

federal court. See MCI Telecomm. Corp. v. Bell Atl.-Pa., 271 F.3d 491, 510 (3d Cir. 2001),

cert. denied, 537 U.S. 941 (2002). Therefore both parties' motions to dismiss should be denied.[1]

---

[1] To the extent it is suggested by the DPUC or Cox, the EPS decision is not relevant to and takes no position on the issue of federal jurisdiction before this Court.

4

## A.    At Its Core, This Case Is About The DPUC's Interpretation And Application Of Federal Law

"Because Congress validly terminated the states' role in regulating local telephone competition and, having done so, then permitted the states to resume a role in that process, the resumption of that role by a state is a congressionally bestowed gratuity.  The state commission's authority to regulate comes from § 252(b) and (e), not from its own sovereign authority."  MCI Telecomm. Corp., 271 F.3d at 510; see also AT&T Corp., 525 U.S. at 378.  The Final Decision makes clear that this case is about the DPUC's actions taken under federal law:

> The Department is asserting authority over the Telco's CTTS based on Conn. Gen. Stat. §§ 16-247b(b) in conjunction with 16-247f(a) and 16-247a.  Such exercise of authority is consistent with the federal provisions of §§ 251 and 252 of the Act.
> ....
>
> Based on the above-mentioned state and federal statutes . . . the Department concludes it has authority to adjudicate Cox's claims.

Final Decision (Compl. Ex. F; Rcd. XII-2) at 10 (emphasis added); see also id. at 9-10 ("Pursuant to §§ 251 and 252 of the Act, the Department has an obligation to ensure that all ILEC interconnection and network elements are just and reasonable."); see also Interim Decision (Compl. Ex. B; Rcd. XII-1) at 4 ("the Department believes that § 251(c)(2) of the Act provides for the physical linking of telecommunication networks for the mutual exchange of traffic").  In fact, despite moving to dismiss SNET's appeal, the parties really do not argue that this case is not about federal law.  See DPUC Br. at 8 (used federal law to interpret "interconnection"), id. at 10 (noting SNET was ordered to create a new service consistent with federal and state pricing guidelines), id. at 31 (DPUC's authority to regulate CTTS as an interconnection is "express" under § 251), id. at 32 ("The DPUC's interim and final decisions are a reasonable interpretation

5

and application of the 1996 Telecom Act . . . ."), id. at 36 ("A holding that SNET does not have

the obligation to provide CTTS at rates determined by the DPUC in accordance with both federal

and state law would make a very odd partner with § 251(a) . . . "); July 21, 2003 Memorandum of

Law of Cox Connecticut Telcom, L.L.C. in Support of its Motion for Summary Judgment ("Cox

Br. at __") at 14 ("DPUC's exercise of its jurisdiction and authority pursuant to the state statutes

is consistent with the federal scheme"), id. ("federal law grants to Connecticut and other states

the authority to impose requirements on a telecommunications carrier . . . .").  AT&T does not

argue that this case is not about federal law.  In fact, it offers that "[t]he Department properly

found that its decision represents enforcement of SNET's obligations under 47 U.S.C. §§ 251(a)

and 251(c)(2)."  July 22, 2003 Memorandum of Law in Support of AT&T Communications of

New England, Inc.'s Motion for Summary Judgment ("AT&T Br. at__") at 9.  The DPUC's post

hoc rationalizations cannot change the fact that this case is about and controlled by federal law.

The absurdity of the DPUC's position is further revealed by that fact that the Decisions

challenged here actually involve an arbitrated service rate – this CTTS service and the questions

of whether it was required to be provided by SNET under the 1996 Act and at what rates were

arbitrated under § 252 before the DPUC in 1996 and the DPUC declined to regulate SNET's

proposed rates.  See Final Decision (Compl. Ex. F; Rcd. XII-2) at 6; see also In re Application of

MCI Telecommunications Corp. for Arbitration Pursuant to Section 252(B) of the

Telecommunications Act of 1996, Docket No. 96-09-09, at 22 (January 10, 1997) ("SNET shall

provide [CTTS] at [SNET's contracted] rate of $0.035 per minute . . . . "), Decision attached to

Keith Krom Affidavit ("Krom Aff.") as Exhibit 1.  This determination was the basis for the

DPUC's subsequent approval of each of the 56 Interconnection Agreements at issue here.  See

6

infra at 28 - 29 and Section V.

Moreover, the so-called "investigation" or "generic proceeding" at issue here was

essentially a second arbitration,[2] this time global, instigated to avoid piecemeal arbitration for

each of the 56 agreements. See Jan. 30, 2002 Petition for Investigation into Transit Cost Study

and Rates (Rcd. I-1) at 3. Finally, the DPUC cannot seriously take the position that § 252 is

limited to arbitrated matters given that it recently argued the scope of § 252 reaches non-

arbitrated proceedings: "State commission action and judicial review thereof is not just limited

to arbitrating interconnection agreements and approving or disapproving negotiated agreements,

but includes State commissions interpreting agreements already approved." Jan. 22, 2003

Memorandum of Law of the State of Connecticut Department of Public Utility Control's Motion

in Support of Summary Judgment and in Opposition at 5-6.[3] Memorandum attached to Krom

Aff. as Exhibit 2.

Regardless, § 252(e)(6)[4] by its very terms covers this action. The DPUC made a

"determination" regarding the interconnection agreements between SNET and 56 other parties.

The terms are clear that a determination need not "involve an arbitration of an interconnection

---

[2] This act alone violates the underpinnings of the 1996 Act and the sanctity of contracts entered into under the Act: "Permitting voluntary negotiations for binding interconnection agreements is the very essence of section 251 and 252." Report and Order on Remand and Further Notice of Proposed Rulemaking, Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers, Docket Nos. 01-338, et al., FCC 03-36, 2003 FCC LEXIS 4697, ¶701 (rel. Aug. 21, 2003) ("Triennial Review Order").

[3] The Southern New England Telephone Company v. State of Connecticut Department of Public Utility Control, et al., Civil Action No. 3:02CV1022 (D. Conn.) (JCH).

[4] 47 U.S.C. § 252(e)(6) provides in relevant part: "In a case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section."

7

agreement," as the DPUC argues (DPUC Br. at 1); rather § 252(e)(6) covers any "such determination under this section," which includes arbitrated, negotiated and approved agreements. See 47 U.S.C. § 252 generally. See also AT&T Communications of N.J., Inc. v. Verizon N. J., Inc., 270 F.3d 162, 168 (3d Cir. 2001) (jurisdiction under § 252(e)(6) where final agreement approved by state at issue); MCI Telecomm. Corp. v. N.Y. Tel. Co., 134 F. Supp.2d 490, 494 (N.D.N.Y. 2001) (federal jurisdiction triggered "[i]n any case where a state commission makes a determination regarding disputed issues between an [incumbent] LEC and CLEC.").

The DPUC's jurisdictional attack also fails because "even if § 252(e)(6) does not confer jurisdiction, it at least does not divest the district courts of their authority under 28 U.S.C. § 1331 to review the [state's] order." Verizon Md., Inc., 535 U.S. at 642. It is not contested that the DPUC's actions may not be inconsistent with federal law. Final Decision (Compl. Ex. F; Rcd. XII-2) at 10; DPUC Br. at 9-10. The source for what the federal law means is the FCC, not the DPUC. See MCI Telecomm. Corp., 271 F.3d at 516; AT&T Corp., 525 U.S. at 397 (ambiguity resolved by implementing agency). So the DPUC must look to the FCC to determine whether its actions at the state level are consistent with the 1996 Act.

The DPUC further claims that the only "references to federal law [in the Final Decision] pertain to the clarification of the term 'interconnection,'" but this claim is belied by the Final Decision's ultimate "determination" that DPUC's actions are consistent with the 1996 Act. DPUC Br. at 8; Final Decision (Compl. Ex. F; Rcd. XII-2) at 10. Even so, the FCC's interpretation of the term "interconnection" is the basis for the DPUC's purported authority to render its Decisions. Again, to make this determination, the DPUC was acting under and construing federal law. This is sufficient to confer federal jurisdiction. See Verizon Md., Inc.,

8

535 U.S. at 643.

Finally, this matter concerns questions under the United States Constitution and these

questions alone confer federal jurisdiction. See General Motors Corp. v. Romein, 503 U.S. 181,

187 (1992).[5]

### B.    The DPUC's Alternate Theories Also Fail

#### 1.    The Court Does Not Lack Subject Matter Jurisdiction Over This Case Under The Well-Pleaded Complaint Rule Or Otherwise

The DPUC makes a series of arguments in support of its assertion that this Court does not

have subject matter jurisdiction over SNET's claims.  In Section II.A.2.a., the DPUC asserts that

this Court does not have federal question jurisdiction.  In Section II.A.2.b., the DPUC asserts that

the Declaratory Judgment Act does not provide the Court with jurisdiction.  In Section II.A.2.c.,

the DPUC asserts that footnote 14 of the Shaw decision is unavailing, and in section 2.d., the

DPUC argues in the alternative that even if this Court had jurisdiction over the these claims, the

Court should abstain from exercising that jurisdiction under the Burford extension doctrine.  As

will be discussed below, all of these arguments are unavailing.

---

[5] The DPUC also claims that SNET failed to appeal the Interim Decision "as provided by the UAPA," apparently in an attempt to argue waiver.  DPUC Br. at 10 and n. 6.  The DPUC cites to SNET's appeal of the Gemini petition to the Connecticut Superior Court as support for this claim.  Id. (The Southern New England Telephone Company v. Department of Public Utility Control, No. CV 03-0519831-S ("Gemini")).  In Gemini, however, the DPUC argued that interim decisions are not final rulings for purposes of appeal under Connecticut's administrative law.  See April 4, 2003 DPUC Memorandum of Law in Support of Motion to Dismiss at 11 (interim decision not final decision for purposes of appeal under Conn. Gen. Stat. § 4-183).  Memorandum attached to Krom Aff. as Exhibit 3.  Irrespective of the DPUC's conflicting positions, SNET has appealed the interim decision in this case; well within the 4 year statute of limitations period.  See 28 U.S.C. § 1658.

### a.  The DPUC's Argument Concerning The Well-Pleaded Complaint Rule Is Contrary To Recent Supreme Court Authority

In Sections II.A.2.a. and II.A.2.c. of its Brief, the DPUC makes an elaborate argument

that the Court does not have jurisdiction over this claim under the well-pleaded complaint rule

because this action does not "arise under" the Constitution or the laws of the United States.

Citing to <u>Fleet Bank v. Burke</u>, 160 F.3d 883, 887 (2d Cir. 1998), the DPUC claims that "federal

subject matter jurisdiction is lacking for a declaratory judgment action or an action that

anticipates a federal preemption defense to a threatened state law enforcement action." DPUC

Br. at 14. Finally, the DPUC asserts in Section II.A.2.c. that SNET's anticipated reliance on

footnote 14 from the United States Supreme Court's decision in <u>Shaw v. Delta Air Lines, Inc.</u>,

463 U.S. 85 (1983) is "unavailing." All of these arguments should be rejected.

### i.  The DPUC's "Arising Under" Argument Is Directly Contradicted By Recent Supreme Court Authority

The DPUC asserts that 47 U.S.C. § 252(e)(6) provides the federal courts with jurisdiction

"to review state commissions' determinations only with respect to the question whether an

interconnection agreement 'meets the requirements of §§ 251 and 252.'" DPUC Br. at 16-17.

The DPUC further asserts that "[f]or review of other state commission determinations, such as

the DPUC's generic investigation of SNET's excessive charges for CTTS, the 1996 Telecom. Act

leaves jurisdiction with the state commissions and courts." <u>Id.</u> The DPUC claims that as a result

of this "limited grant of federal jurisdiction in 47 U.S.C. § 252(e)(6) ... the exercise of § 1331

general federal question jurisdiction would `flout, or at least undermine congressional intent.'"

<u>Id.</u> Finally, it boldly asserts that "it would be nonsensical to conclude that even though Congress

carefully articulated jurisdictional responsibility in the 1996 Telecom. Act, it nonetheless

10

intended to have 28 U.S.C. § 1331 override this effort." Id.

Unfortunately for the DPUC, the United States Supreme Court, in an indistinguishable 2002 case concerning the 1996 Act, interpreting the same federal statutes at issue here, flatly rejected the Defendants' view that § 1331 jurisdiction would be "nonsensical" or would "flout or undermine Congressional intent." See Verizon Md., Inc., 535 U.S. 635 (2002) ("Verizon"). As will be discussed below, the Verizon decision is precisely on point and clearly resolves the jurisdictional question now before the Court in SNET's favor.

In Verizon, the plaintiff, an incumbent local exchange carrier, filed an action against the Public Service Commission of Maryland seeking injunctive and declaratory relief from a commission order that required the plaintiff to make certain payments of reciprocal compensation under an interconnection agreement. Id. at 640. As in the instant case, the plaintiff relied upon 47 U.S.C. § 252(e)(6) and 28 U.S.C. § 1331 as bases for jurisdiction. Id. at 641. The parties argued as to whether or not the express language of § 252(e)(6) gave the district court authority to review a commission decision that interpreted an interconnection agreement. Id. at 642. The Supreme Court declined to address that issue, however, concluding instead that it did not matter because 28 U.S.C. § 1331 provided the federal courts with an alternate basis for jurisdiction over the claim. Id. The court reasoned that "even if § 252(e)(6) does not confer jurisdiction, it at least does not divest the district courts of their authority under 28 U.S.C. § 1331 to review the Commission's order for compliance with federal law." The Court went on to explain that:

> Verizon alleged in its complaint that the Commission violated the Act and the FCC ruling when it ordered payment of reciprocal compensation for ISP-bound calls. Verizon sought a declaratory judgment that the

11

> Commission's order was unlawful, and an injunction prohibiting its enforcement. <u>We have no doubt that federal courts have jurisdiction under § 1331 to entertain such a suit. Verizon seeks relief from the Commission's order "on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail," and its claim "thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."</u>

<u>Id.</u> (quoting <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 96, n.14. (1983)) (emphasis added). The Court concluded that "nothing in the Act displays any intent to withdraw federal jurisdiction under § 1331; we will not presume that the statute means what it neither says nor fairly implies." <u>Id.</u> at 644.

The instant case is indistinguishable from <u>Verizon</u>. As in <u>Verizon</u>, SNET is an incumbent local exchange carrier that is seeking declaratory and injunctive relief from the defendant commission's decisions because the decisions conflict with the 1996 Act. Also as in <u>Verizon</u>, SNET asserts that this Court has federal question jurisdiction over this claim under 47 U.S.C. § 252(e)(6) and 28 U.S.C. § 1331. The <u>Verizon</u> court made clear that the federal courts have jurisdiction over claims of this type pursuant to § 1331 (if not § 252(e)(6) also). <u>Id.</u> at 644; <u>see Worldcom, Inc. v. Connecticut Dept. of Pub. Util. Control</u>, 229 F. Supp.2d 109, 114-15 (D. Conn. 2002) (relying on <u>Verizon</u> to conclude that the court had jurisdiction under 28 U.S.C. § 1331 to hear a claim brought by a competing local exchange carrier against the DPUC under the 1996 Act).

For these reasons, there is no merit to the DPUC's argument that this Court does not have jurisdiction to hear this claim and these arguments should be rejected.

12

### ii.    The Well-Pleaded Complaint Rule Does Not Apply

The DPUC maintains that the Court does not have jurisdiction over this action under the well-pleaded complaint rule. It asserts that under the rule, this action does not arise under federal law, because the federal law claims asserted by SNET are really just allegations in avoidance of defenses that the DPUC might interpose. In particular, the DPUC vaguely asserts that "SNET raises a federal preemption claim merely as a defense to the enforcement of the Department's Decision." DPUC Br. at 14.

The DPUC mischaracterizes the Verified Complaint. SNET is not raising its preemption claim as a defense to the enforcement of the Final Decision, but is instead challenging the legality of that decision under federal law. As explained above, the Supreme Court clarified in the Verizon case that the federal courts have jurisdiction under 28 U.S.C. § 1331 to hear suits seeking injunctive and declaratory relief against a state commission alleging that the commission's action was preempted by the 1996 Act. Verizon Md., Inc., 535 U.S. at 642; Worldcom, Inc., 229 F.Supp.2d at 114-15. This is just such a case.

After Verizon, it is highly doubtful whether the well-pleaded complaint rule has any application in this context at all. Even if we assume, arguendo, that Verizon is not dispositive of the issue, the DPUC's reliance on Fleet Bank v. Burke, 160 F.3d 883, 887 (2d Cir. 1998) ("Fleet Bank") in support of its well-pleaded complaint argument would be misplaced. Consistent with Verizon, Fleet Bank stands for the proposition that the well-pleaded complaint rule will not interfere with a federal court's exercise of jurisdiction in a case where a plaintiff, as in this case, seeks an injunction from state regulation on the ground that such regulation is preempted by a federal statute. Id. at 888-89. It is significant that in reaching that conclusion, the Fleet Bank and

13

Verizon courts both relied on the oft-cited footnote 14 from Shaw v. Delta Air Lines, Inc., 463

U.S. 85, 96 n. 14 (1983) ("Shaw"). See Verizon Md., Inc., 535 U.S. at 642; Fleet Bank, 160 F.2d

at 888. Shaw's footnote 14 provides in relevant part that:

> It is beyond dispute that federal courts have jurisdiction over suits
> to enjoin state officials from interfering with federal rights. A
> plaintiff who seeks injunctive relief from state regulation, on the
> ground that such regulation is pre-empted by a federal statute
> which, by virtue of the Supremacy Clause of the Constitution, must
> prevail, thus presents a federal question which the federal courts
> have jurisdiction under 28 U.S.C.§ 1331 to resolve.

Shaw, 463 U.S. at 96 (citations omitted; emphasis added). The Fleet Bank court ultimately

recognized Shaw as an "exception" to the well-pleaded complaint doctrine and noted that "Fleet,

like any plaintiff, may invoke federal question jurisdiction to adjudicate an unadorned claim of

federal preemption, at least in a suit seeking an injunction and possibly only a declaratory

judgment." Fleet Bank, 160 F.3d at 891-92.[6]

In Fleet Bank, the plaintiff challenged the Connecticut Banking Commissioner's

conclusion that the Connecticut ATM statutes prohibited the bank from charging a fee to non-

customers for use of the bank's ATM machines. Id. at 885. In its complaint, Fleet sought a

declaration from the District Court that either (a) the Commissioner had adopted an arbitrary,

capricious, and erroneous view of the Connecticut ATM statutes; or, if the District Court agreed

with the Commissioner's view that the Connecticut statutes prohibited the plaintiff from

charging fees to non-customers, (b) the Connecticut ATM statutes were preempted by federal law

---

[6] Although it is true that the Fleet Bank court ultimately concluded that it did not have jurisdiction over the bank's claim, the court reached that conclusion on grounds not applicable here. In particular, the court noted that Shaw was not applicable under the specific facts of the Fleet Bank case, because the plaintiff's lawsuit was really nothing more than an attempt to have the federal court construe a state regulatory statute. Id. at 884 and 887-891.

(i.e. the National Bank Act). Id. Only in the event that the court concluded that the

Commissioner had properly construed the state statute, did the plaintiff seek injunctive relief

under federal law to prohibit the Commissioner from interfering with the imposition of the fee.

Id. On these facts, the court held that the Shaw exception to the well-pleaded complaint rule was

inapplicable in that it "does not extend beyond instances where the plaintiff, seeking an

injunction on the ground of preemption, does not dispute the meaning and application of state

law." Id. at 893. The court reasoned that:

> Shaw itself stands as something of an exception to the well-
> pleaded complaint rule that normally prevents a plaintiff, at least in
> declaratory judgment suits, from invoking federal court jurisdiction
> to anticipate its own federal defense to an apprehended
> enforcement action by state officials. It is one thing for the
> injunction request to trump the well-pleaded complaint rule in
> cases where the plaintiff does not dispute the application of the
> allegedly preempted state law; it is quite a different thing when the
> plaintiff comes to federal court requesting that court to construe
> state law to be inapplicable, and asserts federal preemption as a
> contention in reserve for use only if the initial claim is rejected.

Id. at 891.

    The narrow limitation on Shaw discussed in Fleet Bank is certainly not applicable here.

Unlike the plaintiff in Fleet Bank, SNET in the instant case has not asked this Court to interpret

state law. To the contrary, SNET has asked the Court to consider whether the Decisions and the

orders set forth therein are contrary to the 1996 Act and are therefore preempted. As such, the

Verified Complaint falls squarely within Shaw and the Verizon case, and the Fleet Bank

limitation to Shaw is inapplicable. Obviously, the Verizon Court, in a 1996 Act case with

virtually identical facts, did not agree with the DPUC's assessment that Shaw's footnote 14 is

unavailing in this context. Verizon Md., Inc., 535 U.S. at 642.

15

For all of the foregoing reasons, this Court should conclude that the well-pleaded complaint rule is inapplicable to the instant action and that the Court has jurisdiction under 28 U.S.C. § 1331 (and/or 47 U.S.C. § 252(e)(6)) to consider this claim.

### 2. SNET Does Not Rely On The Declaratory Judgment Act For Jurisdiction

The DPUC argues that this Court lacks subject matter jurisdiction because the Declaratory Judgment Act does not provide federal court jurisdiction. DPUC Br. at Section II.A.2.b. This argument is unavailing. Contrary to the DPUC's argument, SNET does not rely on the Declaratory Judgment Act as an independent basis for jurisdiction. As explained above, this Court has subject matter jurisdiction over this suit pursuant to 47 U.S.C. § 252(e)(6), 28 U.S.C. § 1331, 28 U.S.C. § 1367, Article IV, Clause 2 and Article I, § 10 of the U.S. Constitution.

### 3. This Court Should Not Abstain From Exercising Jurisdiction Under Burford

The DPUC also argues that even if this Court has federal question jurisdiction over this case, the Court should abstain from exercising that jurisdiction under the Burford abstention doctrine. This argument, too, should be rejected.

The United States Supreme Court has recognized that federal courts have "a 'virtually unflagging obligation' to exercise their jurisdiction." Deakins v. Monaghan, 484 U.S. 193, 203 (1988) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). Despite this general rule, the courts have recognized certain narrow circumstances (including the Burford doctrine, as described below) in which the federal courts may abstain from the exercise of federal jurisdiction. These cases make clear that "[a]bstention from the exercise of

16

federal jurisdiction is the exception, not the rule." <u>Colorado River Water Conservation Dist.</u>, 424 U.S. at 813. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." <u>Id.</u> (quoting <u>County of Alleghany v. Frank Mashuda Co.</u>, 360 U.S. 185, 188-189 (1959)). "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important counterveiling interest." <u>Id.</u>

The DPUC asserts that this Court should abstain from exercising jurisdiction under the <u>Burford</u> abstention doctrine. The <u>Burford</u> doctrine is essentially "concerned with protecting complex state administrative processes from undue federal influence." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 727 (1996) (quoting <u>New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans</u>, 491 U.S. 350, 362 (1989)). Under the <u>Burford</u> doctrine, "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies" when one of two factors is met: (1) there exist "difficult questions of state law bearing on policy problems of substantial public import; or (2) the exercise of federal review ... would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." <u>New Orleans Pub. Serv., Inc.</u>, 491 U.S. at 361 (internal quotation marks omitted). Because neither of these factors is present in this case, the Court should not abstain under <u>Burford</u>.

17

a.     **SNET Has Not Asserted Any Claim Under State Law, And Therefore, The First Burford Factor Is Not Present**

The Defendants do not raise a challenge based on the first factor. Nor could they. The issue

for this Court to decide is clear: whether the DPUC's Decisions conflict with, and are therefore

preempted by, federal law. This issue does not require the Court to resolve any questions about state

law, and accordingly, the case does not fall within the first factor of Burford. See New Orleans Pub.

Serv., Inc., at 361-62 (holding the Burford abstention was not appropriate where the case did not

involve any state law claim, or even an assertion that the federal claims were "in any way entangled

in a skein of state-law that must be untangled before the federal case can proceed"); GTE North, Inc.

v. Strand, 209 F.3d 909, 920-21 (6th Cir. 2000) (holding that Burford abstention was not appropriate

in a case brought under the 1996 Act challenging an order by a state commission, because, among

other things, the case did not concern a disputed issue of state law, but rather concerned a potential

conflict between state and federal telecommunications laws); Ohio Bell Tel. Co. v. ICG Telecom

Group, Inc., 2000 WL 1469356 at *4 (S.D. Ohio, Sept. 29, 2000) (same) (copy attached at Tab B);

Bell Atl.-Pa., Inc. v. Pennsylvania Pub. Util. Comm'n, 107 F.Supp.2d 653, 666 (E.D. Pa. 2000)

(holding that Burford abstention was not appropriate in a case brought under the 1996 Act

challenging an order by a state commission, because, among other things, the case did not concern

a disputed issue of state law).

For example, in New Orleans Pub. Serv., Inc., the Supreme Court rejected a Burford

abstention argument on these grounds.   491 U.S. at 362.   In that case, the plaintiff, an electric

utility, sought injunctive and declaratory relief from a decision of the defendant local ratemaking

authority denying the plaintiff's request for approval of a rate increase. Id. at 355. The plaintiff

18

asserted that the authority's decision conflicted with and was pre-empted by federal law. Id. The District Court dismissed the suit on Burford abstention grounds, and the Fifth Circuit affirmed. Id. at 355-56. Noting that abstention is "the exception and not the rule," and that the federal courts have a "virtually unflagging" obligation to adjudicate claims within their jurisdiction, the Supreme Court reversed the decisions of the trial and appellate courts, holding that the principles of Burford were not implicated. Id. at 359-362. The lynchpin of the Court's decision was that the case did not involve a state law claim, and that the Court could resolve the question of whether the ratemaking authority's order was violative of federal law without looking beyond the four corners of the order. Id. At 362. The Court reasoned that

> [s]uch an inquiry would not unduly intrude into the processes of state government or undermine the State's ability to maintain a desired uniformity. It may, of course, result in an injunction against enforcement of the rate order, but 'there is ...no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy.'

Id. (quoting Zablocki v. Redhail, 434 U.S. 374, 380, n.5 (1978)). The Court further reasoned that "[w]hile Burford is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases, where there is a 'potential for conflict' with state regulatory law or policy." Id. at 362.

The instant case presents the Court with precisely the same situation. The primary issue in the Verified Complaint requires the Court to determine whether the DPUC's Decisions are inconsistent with the 1996 Act. As in New Orleans Pub. Serv., Inc., this Court can resolve that question without looking beyond the four corners of the Final Decision. For these reasons, the Court should conclude that the case does not fall within the first element of Burford. See id. at 362; Strand, 209 F.3d at 920-21; Bell Atl.-Pa., Inc., 107 F.Supp.2d at 666.

19

**b.    Congress Has Given The Federal Courts Exclusive Jurisdiction To Review State Agency Rulings Concerning Interconnection Agreements, And Accordingly, The Second <u>Burford</u> Factor Also Is Not Present**

The DPUC argues that this case falls within the second <u>Burford</u> factor, asserting that the exercise of federal court review in this case would interfere with Connecticut's specialized regulatory scheme concerning telecommunications.  This argument is unavailing.

Whether or not the State of Connecticut has developed a regulatory scheme concerning telecommunications, <u>Burford</u> abstention is not appropriate in this case, because Congress, in 47 U.S.C. § 252(e)(6), expressly provided the federal courts with primary responsibility for adjudicating 1996 Act challenges to state commission determinations concerning interconnection agreements. <u>Strand</u>, 209 F.3d at 920-21; <u>Bell Atl.-Pa., Inc.</u>, 107 F. Supp.2d at 666. Where addressed, the federal courts have uniformly agreed with this view and have refused to apply <u>Burford</u> abstention in claims brought pursuant to § 252(e)(6). <u>Strand</u>, 209 F.3d at 920-21 (concluding that <u>Burford</u> abstention was inappropriate in a claim brought pursuant to § 252(e)(6), because the statute provided the federal courts with primary jurisdiction over the claim, and the case did not involve a disputed issue of state law); <u>Bell Atl.-Pa., Inc.</u>, 107 F. Supp.2d at 666 (concluding that <u>Burford</u> abstention was not appropriate in a case brought by an ILEC and CLECs against a state commission pursuant to § 252(e)(6), because "[t]here are no questions of state law before this court; nor would a decision in this forum disrupt the state's efforts to establish a coherent policy under state law, given the [1996 Act's] clear intent to inject certain federal standards and federal oversight into state regulation of local services."); <u>Michigan Bell Tel. Co. v. MFS Intelenet of Mich., Inc.</u>, 16 F.Supp.2d 817, 827 (W.D. Mich. 1998) (concluding that <u>Burford</u> abstention was not appropriate in a case brought by an LEC against a state commission pursuant to § 252(e)(6), because the federal courts have "exclusive

20