UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 3:03CV00278 (SRU) |
| THE CONNECTICUT DEPARTMENT OF PUBLIC UTILITY CONTROL, ET AL. ) ) ) ) | |
| Defendants. ) | NOVEMBER 23, 2004 |

## THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY'S NOTICE OF FILING SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff, The Southern New England Telephone Company ("SNET"), hereby submits the following new authority (attached hereto at Tabs 1 and 2) which has come out since the parties completed their summary judgment briefing and upon which it will rely at the oral argument scheduled for December 1, 2004:

Tab 1:    Verizon North Inc. v. Strand, 367 F.3d 577 (6th Cir. 2004).

Tab 2:    Indiana Bell Company, Inc. v. Indiana Utility Regulatory Commission, 359 F.3d 493 (7th Cir. 2004).

Dated at New Haven, Connecticut this 22nd day of November, 2004.

Respectfully Submitted,

**THE PLAINTIFF,
THE SOUTHERN NEW ENGLAND
 TELEPHONE COMPANY**

By _____
Timothy P. Jensen
  Fed Bar No. ct 18888
  TYLER, COOPER & ALCORN, LLP
  205 Church Street
  P.O. Box 1936
  New Haven, Connecticut  06510-1910
  Telephone:  (203) 784-8200
  Facsimile:  (203) 789-2133
  E-Mail:     jensen@tylercooper.com

Keith M. Krom ct 07745
General Attorney
The Southern New England
 Telephone Company
310 Orange Street
New Haven, Connecticut  06510
Telephone:  (203) 771-2509
Facsimile:  (203) 771-6577
E-Mail:     keith.krom@sbc.com

Counsel for The Southern New England Telephone Company

# TAB 1

Westlaw.

367 F.3d 577                                                                                                          Page 1
367 F.3d 577, 2004 Fed.App. 0123P
**(Cite as: 367 F.3d 577)**

C
Briefs and Other Related Documents

United States Court of Appeals,
Sixth Circuit.

VERIZON NORTH INC. et al.,
Plaintiffs-Appellees,
v.
John G. STRAND et al., Defendants-Appellants,
Coast to Coast Telecommunications, Inc.,
Defendant.

No. 02-2322.

Argued: Jan. 30, 2004.
Decided and Filed: April 28, 2004.

**Background:** Incumbent local exchange carrier sued Commissioners of Michigan Public Service Commission (MPSC), challenging order requiring it to pay reciprocal compensation to competitor, with whom it had no interconnection agreement, for costs of terminating telecommunications traffic bound for internet service providers (ISP) served by competitor. The United States District Court for the Eastern District of Michigan, George E. Woods, J., vacated order. Commissioners appealed.

**Holding:** The Court of Appeals, Karen Nelson Moore, Circuit Judge, held that: MPSC order was inconsistent with negotiation and arbitration provisions of Telecommunications Act and thus preempted.
Affirmed.

West Headnotes
**[1] Federal Courts** ⚖═269
170Bk269 Most Cited Cases
**[1] Federal Courts** ⚖═272
170Bk272 Most Cited Cases
Eleventh Amendment did not bar incumbent local exchange carrier's suit against Commissioners of Michigan Public Service Commission (MPSC) in their official capacities for declaratory and/or injunctive relief. U.S.C.A. Const.Amend. 11.
**[2] Judgment** ⚖═665
228k665 Most Cited Cases
**[2] Judgment** ⚖═713(1)
228k713(1) Most Cited Cases
Collateral estoppel applies when (1) issue in subsequent litigation is identical to that resolved in earlier litigation, (2) issue was actually litigated and decided in prior action, (3) resolution of issue was necessary and essential to judgment on merits in prior litigation, (4) party to be estopped was party to prior litigation, or in privity with such a party, and (5) party to be estopped had full and fair opportunity to litigate the issue.
**[3] Judgment** ⚖═715(3)
228k715(3) Most Cited Cases
Prior Court of Appeals decision ruling that Michigan Public Service Commission (MPSC) order requiring incumbent local exchange carrier to file tariff in lieu of negotiated or arbitrated interconnection agreement was preempted did not collaterally estop MPSC from challenging district court's ruling vacating order requiring incumbent local exchange carrier to pay reciprocal compensation to competitor; challenged orders differed in substance.
**[4] States** ⚖═18.81
360k18.81 Most Cited Cases
**[4] Telecommunications** ⚖═267
372k267 Most Cited Cases
Michigan Public Service Commission (MPSC) order requiring incumbent local exchange carrier to pay reciprocal compensation to competitor, with whom it had no interconnection agreement, for costs of terminating telecommunications traffic bound for internet service providers (ISP) served by competitor was inconsistent with negotiation and arbitration provisions of Telecommunications Act and thus preempted. Communications Act of 1934, § 252, as amended, 47 U.S.C.A. § 252.
*577 Gerald Masoudi (argued and briefed), Kirkland & Ellis, Washington, DC, James P. Feeney , Feeney Kellett, Wienner & Bush, Bloomfield Hills, MI, A. Randall Vogelzang, Irving, TX, Seth D. Gould *578 (briefed), Weinner & Gould, Troy,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

367 F.3d 577  
367 F.3d 577, 2004 Fed.App. 0123P  
**(Cite as: 367 F.3d 577)**

Page 2

MI, for Plaintiff-Appellee.

David A. Voges, Asst. Atty., Michael A. Nickerson (argued and briefed), Office of the Attorney General Public Service Division, Lansing, MI, for Defendant-Appellant.

Robert J. Franzinger, Dykema Gossett, Detroit, MI, Thomas E. Maier, Clark Hill, Okemas, MI, for Defendant.

Before: MARTIN and MOORE, Circuit Judges; WEBER, District Judge. [FN*]

> FN* The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

### OPINION

MOORE, Circuit Judge.

The Federal Telecommunications Act of 1996 (the "1996 Act" or the "Act"), Pub.L. No. 104-104, 110 Stat. 56 (1996) (codified in various sections of 47 U.S.C.) fundamentally restructured local telephone markets by ending the era of state-granted telecommunications monopolies and by encouraging competition among providers of local telephone service. *AT & T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 371, 119 S.Ct. 721, 142 L.Ed.2d 835 (1996). To reach this objective, the 1996 Act required incumbent telecommunications carriers to share their networks with competitors in various ways. Nestled within the Act's local competition provisions is a detailed scheme for the creation of interconnection agreements that serve as the foundation for increased competition between Incumbent Local Exchange Carriers ("incumbents") and Competitive Local Exchange Carriers ("competitors"). *See* 47 U.S.C. §§ 251, 252. The Act's regulatory scheme explicitly foresees but also clearly circumscribes the participation of state regulatory entities in the commencement and enforcement of interconnection agreements. It is within this context that we consider the extent to which a state regulatory commission can encourage competitors to enter the market independent of the Act's provisions governing interconnection agreements.

Defendants-Appellants John G. Strand, Robert B. Nelson, and David A. Svanda, in their official capacities as Commissioners of the Michigan Public Service Commission ("MPSC" or "Commissioners"), appeal a judgment of the United States District Court for the Eastern District of Michigan vacating an MPSC order. The MPSC order, issued in February 2000, forced the corporate precursors of Plaintiffs-Appellees Verizon North Inc. and Verizon North Systems (collectively, "Verizon") to pay reciprocal compensation to Defendant Coast To Coast Telecommunications, Inc. ("Coast") for the costs of terminating telecommunications traffic bound for Internet Service Providers ("ISP") served by Coast. Verizon contended in federal court that the MPSC's order conflicted with the negotiation and arbitration provisions of the Act and thus was preempted. The district court vacated the MPSC order, and we AFFIRM for the reasons explained below.

### I. FACTUAL AND PROCEDURAL BACKGROUND
### A. FACTUAL HISTORY

The dispute between Verizon, an incumbent, and Coast, a competitor, concerns telecommunications traffic connecting end-user consumers to ISPs through equipment owned by Verizon and Coast. One of the purposes of the Act was to create a mechanism that forced incumbents to provide interconnectivity with the facilities *579 and equipment of competitors. Otherwise, incumbents could halt efforts to increase competition in any local market. To this end, Congress provided a statutory mechanism to encourage the development of interconnection agreements between competitors and incumbents. Coast did not have any such agreement with Verizon. However, Coast did have an interconnection agreement with Ameritech, a different incumbent, under which Coast provided telephone and other services within the territory of Ameritech.

When a Verizon customer attempts to contact an ISP that is a Coast customer, the Verizon customer uses a computer modem to place a "local" call to an ISP with an NPA/NXX number assigned to Coast (NPA represents the area code, NXX represents the first three digits of a seven-digit local number). The call is first transferred to Ameritech's facilities

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

367 F.3d 577  
367 F.3d 577, 2004 Fed.App. 0123P  
**(Cite as: 367 F.3d 577)**

Page 3

before it is routed to Coast via Coast's Pontiac Exchange switch. Coast eventually connects the call to the ISP. The presence of Ameritech as a carrier is necessary because Coast neither provides local exchange service within Verizon's territory nor connects its facilities directly with those belonging to Verizon. ISP-bound calls are considered to be "local," and end-users are charged for a local call only by virtue of prior pronouncements of the Federal Communications Commission ("FCC") on the issue. In reality, ISP-bound calls often travel beyond the local exchange area, and the websites accessed via the ISP are often located in different states or even different countries.

The chief dispute between Verizon and Coast revolves around the costs of terminating telecommunications traffic. Local carriers often reciprocally compensate each other for the transportation and termination of local telephone calls according to rates established in their interconnection agreements. There has been considerable debate over whether incumbents must broach the issue of reciprocal compensation for the termination of ISP-bound "local calls" when forming interconnection agreements, *see infra* pps. 14-19, but in any event, Coast and Verizon had no interconnection agreement.

Coast claimed that Verizon was responsible for the costs of terminating ISP-bound traffic originating from Verizon customers. Coast had filed a tariff with the MPSC pursuant to which Coast established a rate of 1.5 cents per minute in reciprocal compensation charges. Coast informed Verizon that based upon 7.9 million minutes of ISP-bound traffic between March 9 and July 31, 1999, Verizon owed Coast almost $120,000. Verizon refused to pay. Consequently, on August 18, 1999, Coast filed an application with the MPSC, requesting that the MPSC resolve the dispute. Verizon argued in response that the MPSC did not possess subject matter jurisdiction over ISP-bound calls because they are interstate in nature. Verizon also contended that it was not required to pay reciprocal compensation for the termination of calls in the absence of an interconnection agreement negotiated or arbitrated pursuant to 47 U.S.C. §§ 251, 252. The MPSC denied Verizon's motion to dismiss on September 30, 1999, and held a full evidentiary hearing on November 4, 1999.

The MPSC made its ruling on February 22, 2000. It exercised jurisdiction over the dispute even though Coast relied "on its tariff, and not an interconnection agreement, as the basis for imposing termination charges on [Verizon]." Joint Appendix ("J.A.") at 11. In so holding, the MPSC relied on a past decision, *Bierman v. CenturyTel of Mich., Inc.,* Case No. U-11821 (Mich. Pub. Serv. Comm'n Apr. 12, 1999), in which it ruled that interconnection *580 between two local exchange carriers can be accomplished by interconnection agreement or by tariff. The MPSC rejected Verizon's argument that ISP-bound traffic was subject to the exclusive jurisdiction of the federal government because it was inherently interstate. In rejecting this contention, the MPSC noted that even if the FCC did construe such traffic as being interstate in nature, the FCC did not disrupt preexisting state-commission decisions to the contrary. To further support its holding that a state tariff can supplant an interconnection agreement, the MPSC stated, "Although the FCC may have assumed that an interconnection agreement will be the typical setting in which reciprocal compensation disputes over ISP traffic are resolved, it did not dictate that a state act only in that context." J.A. at 12. The MPSC concluded that Verizon was responsible for the termination charges.

Verizon brought an action against the Commissioners and Coast in the U.S. District Court for the Eastern District of Michigan on March 24, 2000, seeking declaratory and injunctive relief. [FN1] Both parties agreed to have the district court decide the case without any additional discovery, and both parties contended that they were entitled to summary judgment. The district court initially rejected Verizon's contention that ISP-bound traffic was exempted from the Act's reciprocal compensation requirements because the FCC's regulations reaching such a conclusion had been vacated by the D.C. Circuit. *See WorldCom, Inc. v. FCC,* 288 F.3d 429, 433 (D.C.Cir.2002). The district court agreed with Verizon that the MPSC erred when it required Verizon to pay Coast in the absence of an interconnection agreement between the parties. The court reasoned that using a state tariff as a substitute for an interconnection agreement sidestepped the negotiation and arbitration provisions of the Act. *See* 47 U.S.C. § 252. Accordingly, the district court held, "Because

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

367 F.3d 577  
367 F.3d 577, 2004 Fed.App. 0123P  
(Cite as: 367 F.3d 577)

Page 4

the MPSC approved [Coast]'s tariff without the parties satisfying the clear dictates of § 252's negotiation/arbitration process, the MPSC acted contrary to the [Act]." J.A. at 32. The district court vacated the MPSC decision and remanded the case, and the Commissioners timely appealed. [FN2]

> FN1. The original plaintiffs in this case were captioned as GTE North Inc. and Contel of the South, Inc. However, by order of August 22, 2000, the district court granted the plaintiffs' unopposed motion to change the captioning to reflect the renaming of the plaintiffs as Verizon North Inc. and Verizon North Systems, respectively, in the wake of a corporate merger.

> FN2. Defendant Coast is not a party to this appeal. At oral argument, neither Verizon nor the Commissioners could explain Coast's absence. Coast is still operating, although it was purchased by Allegiance Telecom, Inc. in September 2001.

On appeal, the Commissioners renew the argument they presented at the district court, i.e., that state enforcement of Coast's tariff is not preempted by the Act. They aver that interconnection agreements negotiated pursuant to § 252 are not the exclusive manner by which incumbents can be made responsible for reciprocal compensation. Verizon responds by asserting that the MPSC is collaterally estopped from challenging the district court's ruling because of the MPSC's defeat in *Verizon North, Inc. v. Strand*, 309 F.3d 935 (6th Cir.2002). Verizon also alternatively contends that the district court was correct in its holding that the MPSC cannot order a local exchange carrier to pay termination costs under a state tariff in the absence of an interconnection agreement.

**\*581 B. JURISDICTION**

[1] Verizon originally sought injunctive and declaratory relief against the enforcement of the MPSC order. Based upon the Supreme Court's ruling in *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 643-44, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002), the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. In *Verizon Md.*, the Court explained that the Eleventh Amendment does not bar a suit against the commissioners of a state regulatory body under the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), when the suit is brought against the individual commissioners in their official capacities and the remedy sought is declaratory and/or injunctive relief. *Verizon Md.*, 535 U.S. at 648, 122 S.Ct. 1753; *see also Mich. Bell Tel. Co. v. MFS Intelenet of Mich., Inc.*, 339 F.3d 428, 432-33 (6th Cir.2003) (applying the holding in *Verizon Md.*). We have proper jurisdiction over the Commissioners' appeal of a final judgment of the district court, pursuant to 28 U.S.C. § 1291.

**II. ANALYSIS**
**A. Standard of Review**

The standard of review is multi-tiered because the district court granted summary judgment in a review of a decision of a state administrative body. We review de novo a district court order granting summary judgment. *MFS Intelenet*, 339 F.3d at 433 . Summary judgment is appropriate when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing that there is an absence of evidence "to establish the existence of an element [that is] essential to" the nonmoving party's action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Verizon and the MPSC do not dispute any of the facts in the state administrative record that the district court adopted. Therefore, we must simply decide whether the MPSC order was violative of the Act and thus was preempted. *See United States v. Cinemark USA, Inc.*, 348 F.3d 569, 575 (6th Cir.2003).

The de novo summary judgment review must also "employ the proper standard or standards of review for review of the underlying *state* administrative ruling." *MFS Intelenet*, 339 F.3d at 433. We "first review *de novo* whether a state public service commission's orders comply with the requirements of the Telecommunications Act." *Id.* We hold that the MPSC's order does not comply with the requirements of the Act, and thus we do not reach the point of reviewing the state commission's

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

367 F.3d 577
367 F.3d 577, 2004 Fed.App. 0123P
(Cite as: 367 F.3d 577)

Page 5

interpretation of Coast's tariff "under the more deferential arbitrary-and-capricious standard of review usually accorded state administrative bodies' assessments of state law principles." *Id.*

**B. Background of the Statutory Scheme**

A brief foray into the mechanics of the Act's interconnection provisions is helpful. To further the goal of deregulating the local telephony market, the Act places certain duties and obligations on various classes of telecommunication providers. All telecommunication carriers, regardless of incumbent status, have "the duty [ ] to interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers." 47 U.S.C. § 251(a)(1). The Act creates obligations for local exchange carriers generally, including a duty not to prohibit the resale of their telecommunications services, 47 U.S.C. § 251(b)(1), a duty to provide number portability, *id.* at § 251(b)(2), and most pertinent to this appeal, a "duty to establish ***582** reciprocal compensation arrangements for the transport and termination of telecommunications" when competitors interconnect with the incumbent's network. *Id.* at § 251(b)(5); *see also* 47 C.F.R. § 51.701(a) ("The provisions of this subpart apply to reciprocal compensation for transport and termination of telecommunications traffic between [local exchange carriers] and other telecommunications carriers."). The Act also prescribes a more specific mandate for incumbents by requiring them to share their networks with competitors through three mechanisms: 1) permit competitors to purchase local services at wholesale rates for resale to end users, *see* 47 U.S.C. § 251(c)(4); 2) permit competitors to lease unbundled elements of the incumbent's network, *see id.* at § 251(c)(3); and 3) permit competitors to interconnect their facilities to the incumbent's network, *see id.* at § 251(c)(2). *See U.S. West Communications, Inc. v. Sprint Communications Co.*, 275 F.3d 1241, 1244 (10th Cir.2002) (describing the Act's structure). As part of these additional obligations for incumbents, the Act imposes a "duty to negotiate in good faith in accordance with section 252 of this title the particular terms and conditions of agreements to fulfill the duties described in [section 251(b)(1)-(5) and (c)]." 47 U.S.C. § 251(c)(1).

Section 252 describes the procedures for the negotiation, arbitration, and approval of interconnection agreements. It establishes an intricate regulatory scheme with various burdens and responsibilities placed upon incumbents, competitors, and state regulatory commissions. After a competitor requests interconnection from an incumbent, "an [incumbent] may negotiate and enter into a binding agreement with the requesting telecommunications carrier or carriers without regard to the standards set forth in [§ 251(b)-(c)]." 47 U.S.C. § 252(a)(1). During the course of these voluntary negotiations, any party may request the state commission to mediate. *Id.* at § 252(a)(2). However, if no agreement is reached or if no negotiations commence within 135 days after the competitor makes its initial request to enter into voluntary negotiations, the competitor can petition the state commission to arbitrate "any open issues" so long as the petition is made within 160 days of the initial request. *Id.* at § 252(b)(1). The Act provides detailed instructions and standards for the arbitration process and the establishment of rates, which the parties and the state commission must follow and implement during the compulsory arbitration process. *Id.* at § 252(b)(2), (c)-(d).

All interconnection agreements "adopted by negotiation or arbitration shall be submitted for approval to the State commission." *Id.* at § 252(e)(1). The state commission can reject an agreement only under limited circumstances, such as when the agreement discriminates against another telecommunications carrier not a party to the agreement, *id.* at § 252(e)(2)(A)(i), or when the agreement "is not consistent with the public interest, convenience, and necessity." *Id.* at § 252(e)(2)(A)(ii). If the state commission fails to carry out its responsibilities under § 252, the FCC can preempt the state commission's jurisdiction and assume responsibility for carrying out the requirements of § 252. *Id.* at § 252(e)(5). State courts do not have jurisdiction "to review the action of a State commission in approving or rejecting an agreement" under § 252, *id.* at § 252(e)(4), as all parties aggrieved by a state commission determination regarding an interconnection agreement must bring an action in federal district court. *Id.* at § 252(e)(6).

The state's role in assisting the process of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

367 F.3d 577  
367 F.3d 577, 2004 Fed.App. 0123P  
(Cite as: 367 F.3d 577)

Page 6

interconnection agreement formation is **\*583** clearly bounded by the plain language of § 252 of the Act. However, the Act does not completely eliminate the role of the state commissions in regulating interconnection between LECs. Section 251(d)(3) provides,

> In prescribing and enforcing regulations to implement the requirements of this section, the [FCC] shall not preclude the enforcement of any regulation, order, or policy of a State commission that--
> (A) establishes access and interconnection obligations of local exchange carriers;
> (B) is consistent with the requirements of this section; and
> (C) does not substantially prevent implementation of the requirements of this section and the purposes of this part.

*Id.* at § 251(d)(3). Thus, the MPSC's order may stand if it is consistent with the requirements of § 252, but to the extent the order is inconsistent with the Act or prevents its implementation, the order is preempted.

### C. Collateral Estoppel

As a threshold issue, Verizon contends that the Commissioners are collaterally estopped from challenging the district court's ruling because of this court's holding in *Verizon North, Inc. v. Strand*, 309 F.3d 935 (6th Cir.2002). The MPSC had issued an order that required Verizon to file a general tariff offering its network elements and services on fixed terms to all potential competitors. Such a fixed-term tariff allowed competitors to purchase services "directly off of the tariff menu" from Verizon without first negotiating (or even requesting negotiations) for an interconnection agreement. *Id.* at 939. We held that the MPSC's tariff requirement was preempted because it was inconsistent with the negotiation and arbitration system created by Congress. *Id.* at 940-41.

[2][3] While the issues presented in *Verizon North* are analogous, the MPSC is not collaterally estopped from bringing this appeal by our prior ruling. Collateral estoppel applies,

> [W]hen (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Hammer v. INS*, 195 F.3d 836, 840 (6th Cir.1999). Collateral estoppel is not proper here because the issue presented on appeal is not "identical to that resolved in the earlier litigation." *Id.* In *Verizon North*, we determined that a state commission order requiring Verizon to file a tariff in lieu of a negotiated or arbitrated interconnection agreement was preempted by the Act. Dissimilarly, we analyze whether a state commission order requiring Verizon to pay termination costs based upon a tariff *unilaterally filed by Coast* is preempted by the Act. The issues are undoubtedly close, but they are not identical because they involve separate MPSC orders that differ in substance. Collateral estoppel does not apply, but, as we explain below, the reasoning of *Verizon North* establishes a principle that is equally, if not more certainly, applicable here.

### D. The MPSC's Order Is Inconsistent With the 1996 Act and Is Thus Preempted

[4] We affirm the district court's judgment vacating the MPSC order because **\*584** the MPSC order is inconsistent with the negotiation and arbitration provisions of § 252 and thus is preempted by the Act. As described above, our holding in *Verizon North* is closely analogous and carries much persuasive force. In that case, we agreed with the district court, which had stated,

> By requiring Verizon to file public tariffs offering its network elements at wholesale services for sale to any party, the MPSC's Order improperly permits an entrant to purchase Verizon's network elements and finished services from a set menu without ever entering into the process to negotiate and arbitrate an interconnection agreement. It thus evades the exclusive process required by the 1996 Act, and effectively eliminates any incentive to engage in private negotiation, which is the centerpiece of the Act.

*Verizon North*, 309 F.3d at 940 (quoting *Verizon North, Inc. v. Strand*, 140 F.Supp.2d 803, 810 (W.D.Mich.2000)). We noted that Congress "clearly stated its intent to supersede state laws that are inconsistent with the provisions of the [Act]." *Id.*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

367 F.3d 577           Page 7
367 F.3d 577, 2004 Fed.App. 0123P
**(Cite as: 367 F.3d 577)**

We accordingly held that the MPSC order bypasse[d] and ignore[d] the detailed process for interconnection set out by Congress in the [Act], under which competing telecommunications providers can gain access to incumbents' services and network elements by entering into private negotiation and arbitration aimed at creating interconnection agreements that are then subject to state commission approval, FCC oversight, and federal judicial review. This is "inconsistent with the provisions of [the Act]," and therefore preempted.
*Id.* at 941.

In *Verizon North*, the MPSC contended that § 252 presents local exchange carriers with one but not the sole option for achieving interconnection. Under the MPSC's logic, the Act did not expressly provide that the negotiation and arbitration mechanisms were the only methods for gaining interconnection, and therefore other methods of achieving interconnection, such as the enforcement of state tariffs, could be used to create interconnection. *Id.* The MPSC analogized to the Supreme Court's holding in *Verizon Communications, Inc. v. FCC*, 535 U.S. 467, 122 S.Ct. 1646, 152 L.Ed.2d 701 (2002), when the Court "refused to read the Act's silence on any obligation or lack thereof on the part of incumbents to bundle elements as an affirmative statement that the imposition of any such obligation would be inconsistent with the Act." *Verizon North*, 309 F.3d at 941 (citing *Verizon Communications*, 535 U.S. at 534, 122 S.Ct. 1646). We rejected the MPSC's analogy because the "detailed procedural scheme--including negotiation, arbitration, state commission approval, FCC oversight, and federal judicial review--set out in § 252 is central to the Act in a way that the bundling requirement is not." *Verizon North*, 309 F.3d at 941; *see also Wisconsin Bell, Inc. v. Bie*, 340 F.3d 441, 444 (7th Cir.2003) (rejecting an identical tariff on similar grounds and relying on our decision in *Verizon North* ).

Our previous decision guides our outcome here. This MPSC order required Verizon to pay termination costs to Coast for ISP-bound calls on the basis of a state tariff filed by Coast. There was no interconnection agreement, no request for negotiations by Coast, and no state-administered arbitration between Verizon and Coast in the event of commenced, but stalled negotiations. Similar to the order in *Verizon North*, the MPSC's order here permits the MPSC to bypass the federal statutory process for reaching an interconnection agreement and to create a *585 competitive relationship via the filing of a unilateral tariff. Instead of achieving a reciprocal compensation arrangement via the negotiation and arbitration mechanism provided in the Act, the MPSC permitted the institution of an interconnection agreement by fiat. [FN3] Such a result is inconsistent with the elaborate statutory framework of § 252.

> FN3. Additionally, future challenges to the specific terms of the Coast tariff would have to be settled in state court, short-circuiting the statutory grant of federal jurisdiction over negotiated/arbitrated interconnection agreements. 47 U.S.C. § 252(e)(4), (6).

In one sense, we are presented with an easier case than *Verizon North* because this order is even more inconsistent with and more deleterious to the Act. The MPSC order in *Verizon North*, and the state order at issue in the Seventh Circuit *Bie* decision, required an incumbent to file a tariff setting forth the rates for competitor interconnection, including reciprocal compensation rates for termination of calls. Competitors could then accept the terms if they wanted to interconnect, reject them if they disliked the rates, or employ the published rates as a starting point in negotiations. As stated by the Seventh Circuit, such an order disrupts the statutorily mandated interconnection process; "It places a thumb on the negotiating scales by requiring one of the parties to the negotiation, the local phone company, but not the other, the would-be entrant, to state its reservation price, so that bargaining begins from there." *Bie*, 340 F.3d at 444. [FN4]

> FN4. The Seventh Circuit opinion continued,
> And it allows the other party to challenge the reservation price, and try to get it lowered, by challenging the tariff before the state regulatory commission, with further appeal possible to a state court--even though Congress, in setting up the negotiation procedure, explicitly

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

367 F.3d 577                                                       Page 8
367 F.3d 577, 2004 Fed.App. 0123P
**(Cite as: 367 F.3d 577)**

excluded the state courts from getting involved in it. At the very least, the tariff requirement complicates the contractual route by authorizing a parallel proceeding. *Wis. Bell, Inc. v. Bie,* 340 F.3d 441, 444 (7th Cir.2003).

If the orders in *Verizon North* and *Bie* placed a thumb on the negotiating scales, tipping them in favor of the competitors, then this MPSC order was a fist slamming down on the scales. The order does not just slightly unbalance the negotiations by forcing the incumbent to show its hand. It instead completely forestalls the need for negotiations. Rather than just forcing the incumbent to reveal the rates it wants to charge, which clearly disrupts the negotiations, this MPSC order completely obviates the need for negotiations by allowing the competitor to establish its own rate without any interaction between the incumbent and the competitor. Section 252 requires the competitor to initiate the bidding. The *Verizon North* MPSC order was faulty because it forced the incumbent to commence the negotiation process. From the perspective of maintaining the viability of the § 252 interconnection agreement process, this MPSC order is much more damaging--it completely removes the incumbent from the negotiation process. This MPSC order eliminates the virtues of *negotiated* competition ensconced in § 252, and it eliminates all incentive to adhere to the federal statutory process. Under the MPSC's order, competitors in the future would have the incentive to file a state tariff rather than request a reciprocal compensation agreement under §§ 251(b)(5) and 252.

One of the primary purposes of the Act is to increase competition in the telephony marketplace. The Act is labeled as "An Act To *promote competition and reduce regulation* in order to secure lower prices and higher quality services for American *586 telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Pub.L. No. 104-104, 110 Stat. 56, 56 (1996) (emphasis added). Part of this statutory imperative is manifested in the § 252 process, which encourages private and voluntary negotiation, backed by the threat of state-commission intervention, to achieve interconnection. *See* H.R. Conf. Rep. No. 104-458,

at 124, 1996 U.S.C.C.A.N. at 135. The MPSC's order frustrates Congress's intent by eviscerating its chosen mechanism for increasing competition in the local telephony market and by upsetting the intricate balance between competitors and incumbents.

The MPSC unavailingly offers several counterarguments. First, the MPSC suggests that two vacated FCC orders, which attempted to resolve the question of whether ISP-bound calls must be covered by interconnection agreements, confirm the MPSC's authority to regulate reciprocal compensation for ISP-bound call termination in a manner not discussed by § 252. The MPSC's contention fails because the FCC orders it cites are not only inapplicable but are also inoperable, as they have been struck down twice by the D.C. Circuit. *See In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996: Inter-Carrier Compensation for ISP-Bound Traffic,* Nos. 96-98/99- 68, 14 F.C.C.R. 3,689 (Feb. 26, 1999) ("ISP Order"), *vacated and remanded by Bell Atl. Tel. Co. v. FCC,* 206 F.3d 1 (D.C.Cir.2000); *In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996: Intercarrier Compensation for ISP-Bound Traffic,* Nos. 96-98/99- 68, 16 F.C.C.R. 9,151 (Apr. 27, 2001) ("Remand Order"), *vacated and remanded by WorldCom, Inc. v. FCC,* 288 F.3d 429, 434 (D.C.Cir.2002). Our opinion in *Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.,* 339 F.3d 428, 435-36 (6th Cir.2003), describes the tangled history of the FCC's decisionmaking in this area, and we see no need to replicate it here.

These now-vacated FCC orders are ultimately irrelevant to this action. The FCC's ISP Order assured the lasting validity of state-commission interpretations of preexisting reciprocal compensation arrangements in light of the FCC's decision to classify ISP-bound traffic as exempt from § 251(b)(5). Under the ISP Order, if two local exchange carriers had agreed to reciprocal compensation in an interconnection agreement, but did not explicitly discuss the issue of ISP-bound traffic, a state commission's judgment that the agreement included ISP-bound traffic would stand. Because there was no interconnection agreement between Coast and Verizon for the MPSC to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

interpret, the ISP Order has no impact on this appeal. The FCC's Remand Order provided that if Verizon were hypothetically negotiating an interconnection agreement with Coast for the future, Verizon would be under no duty to include a provision concerning reciprocal compensation for the termination of ISP-bound traffic. Again, because no interconnection agreement existed between Coast and Verizon, the Remand Order is not relevant. Both FCC orders presume the existence of an interconnection agreement with reciprocal compensation provisions, and neither FCC order explicitly or even implicitly suggests that state commissions can employ tariffs to sidestep the negotiation and arbitration process under § 252. [FN5] Far *587 from giving an alternative to § 252, the FCC orders confirm the importance and strength of the § 252 process, because the ISP Order refrained from upsetting existing interconnection agreements that had been arrived at through the negotiation process.

> FN5. Our most recent holdings on the impact of the FCC's now-vacated orders bolster the conclusion that the FCC orders only refrained from preempting state commissions' interpretations of preexisting interconnection agreements. In *Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.*, 339 F.3d 428 (6th Cir.2003), we upheld an MPSC order that reciprocal compensation was due to a competitor for its costs of terminating ISP-bound traffic based upon the FCC's Orders. We held that there was no reason to interfere with a state commission's determination that reciprocal compensation is appropriate under the terms of a specific contract. *Id.* at 435-36. The *MFS Intelenet* holding presumed the existence of an interconnection agreement. *Id.; see also Mich. Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348 (6th Cir.2003) (upholding the MPSC's interpretation of a preexisting interconnection agreement).

As a second counterargument, the Commissioners point to several provisions of the Michigan Telecommunications Act ("MTA") and prior rulings of the MPSC to show that "[t]he absence of an interconnection agreement between Verizon and [Coast] does not preclude an MPSC order requiring the payment of reciprocal compensation based upon the [Coast] tariff...." Strand Br. at 16. The MTA provides for the establishment of interconnection agreements, the rates to be paid for interconnection, and oversight by the commission. *See* Mich. Comp. Laws §§ 484.2203, 484.2303(2), 484.2310, 484.2359. [FN6] The MPSC, for its part, has ruled previously "that interconnection can be accomplished by agreement *or* tariff." *Bierman v. CenturyTel of Mich., Inc.*, 1999 WL 288796, No. U-11821, at 11 (Mich. Pub. Serv. Comm'n Apr. 12, 1999); *see also In re GTE North, Inc.*, No. U-11580, at 5 (Mich. Pub. Serv. Comm'n Jul. 13, 1998). Yet, no matter the durability or the consistency of the MTA's provisions and the MPSC's prior rulings, this MPSC order cannot stand if it is inconsistent with or prevents the implementation of the interconnection agreement provisions of the 1996 Act. *See* 47 U.S.C. §§ 251(d)(3), 261(b)- (c). As previously explained, the MPSC's order enforcing Coast's tariff is inconsistent with the Act and thus is preempted despite any state statutes or regulatory findings to the contrary.

> FN6. The MTA was to be repealed effective January 1, 2001, but it was amended by 2000 P.A. 295, which altered the repeal date to December 31, 2005.

Third, the Commissioners direct our attention to several district court cases as support for their views. In particular, the Commissioners note an opinion of the United States District Court for the Western District of Michigan that allegedly explains how *Verizon North* is distinguishable from this case. *See Mich. Bell Tel. Co. v. Baraga Tel. Co.*, No. 2:00-CV-136 (W.D.Mich. Aug. 8, 2001). No matter how one could interpret the holding in *Baraga*, to the extent that the district court opinion there reaches a contrary conclusion to our ruling in *Verizon North*, it is overruled.

### III. CONCLUSION

The MPSC order is inconsistent with the negotiation and arbitration provisions of the Act because it permits the state commission to bypass the procedures established by Congress. In doing so, the order distorts the negotiation mechanism that

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

367 F.3d 577
367 F.3d 577, 2004 Fed.App. 0123P
**(Cite as: 367 F.3d 577)**

Page 10

Congress believed would best achieve the intended goal of increased competition in the local telephony market. Accordingly, the MPSC order is preempted. Therefore, we AFFIRM the district court's judgment vacating the MPSC order.

367 F.3d 577, 2004 Fed.App. 0123P

Briefs and Other Related Documents (Back to top)

- 02-2322 (Docket) (Nov. 08, 2002)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

Westlaw.

359 F.3d 493
359 F.3d 493, 31 Communications Reg. (P&F) 1195
**(Cite as: 359 F.3d 493)**

Page 1

**H**
Briefs and Other Related Documents

United States Court of Appeals,
Seventh Circuit.

INDIANA BELL TELEPHONE COMPANY,
INC., Plaintiff-Appellee,
v.
INDIANA UTILITY REGULATORY
COMMISSION, William D. McCarty, David E. Ziegner, in
their capacity as Commissioners of the Indiana
Utility Regulatory Commission
and not as individuals, Defendants-Appellants,
and
AT & T Communications, Inc. and Worldcom, Inc.,
Intervening Defendants-
Appellants,
and
Indiana Office of Utility Consumer Counselor,
Intervening Appellant.

No. 03-1976.

Argued Oct. 23, 2003.
Decided Feb. 26, 2004.

**Background:** Incumbent local exchange carrier (ILEC) brought action against Indiana Utility Regulatory Commission seeking preliminary injunction on allegations that Federal Telecommunications Act preempted Commission's freestanding order, ostensibly under state law, that dictated conditions on provision of local service. Competing local exchange carriers (CLEC) intervened. The United States District Court for the Southern District of Indiana, Larry J. McKinney, Chief Judge, granted judgment for ILEC and entered injunction. Defendants appealed.

**Holding:** The Court of Appeals, Terence T. Evans , Circuit Judge, held that Federal Telecommunications Act precluded state regulatory commission from entering freestanding order, on preemption grounds, which was designed to ensure that incumbent local exchange carrier (ILEC), as applicant for long distance service, would continue to meet its obligations in local service market.
Affirmed.

West Headnotes
[1] **States** ⚖18.81
360k18.81 Most Cited Cases
[1] **Telecommunications** ⚖267
372k267 Most Cited Cases
Federal Telecommunications Act precluded state regulatory commission from entering freestanding order, on preemption grounds, which was designed to ensure that incumbent local exchange carrier (ILEC), as applicant for long distance service, would continue to meet its obligations in local service market. Communications Act of 1934, §§ 3, 251-253, 271, as amended, 47 U.S.C.A. §§ 153, 251-253, 271.

[2] **States** ⚖18.5
360k18.5 Most Cited Cases
When determining whether state law stands as an obstacle to the full implementation of federal law, it is not enough to say that the ultimate goal of both federal and state law is the same; a state law also is preempted if it interferes with the methods by which the federal statute was designed to reach the goal.

*494 Peter J. Rusthoven (argued), Barnes & Thornburg, Indianapolis, IN, for Plaintiff-Appellee.

David L. Steiner (argued), Office of the Attorney General, Indianapolis, IN, for Defendants-Appellants.

Douglas W. Trabaris, American Telephone & Telegraph, John R. Harrington (argued), Jenner & Block, Chicago, IL, Robert G. Mork, Office of Utility Consumer Counselor, Indianapolis, IN, for Intervenors-Appellants.

Before MANION, KANNE, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

359 F.3d 493                                                                                                           Page 2
359 F.3d 493, 31 Communications Reg. (P&F) 1195
**(Cite as: 359 F.3d 493)**

Through the Telecommunications Act of 1996, Congress has had notable success in meeting its goal of fostering competition in the telecommunications industry. But that success has not come without furrowing more than a few brows as lawyers and judges puzzle over the Act's unusual--and unequal-- blending of federal and state authority. So it is not surprising to have before us again a preemption issue, this time revolving around the application of a local telephone service provider to enter the long-distance market. The issue is whether, during the long-distance application process, a state regulatory commission has the power to enter an order designed to ensure the applicant will continue to meet its obligations in the local service market.

In the Act, Congress entered what was primarily a state system of regulation of local telephone service and created a comprehensive federal scheme of telecommunications regulation administered by the Federal Communications Commission (FCC). While the state utility commissions were given a role in carrying out the Act, Congress "unquestionably" took "regulation of local telecommunications competition away from the State" on all "matters addressed by the 1996 Act"; it required that the participation of the state commissions in the new federal regime be guided by federal-agency regulations. *AT & T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 378 n. 6, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). And we recently learned for certain that federal courts can review what the state regulatory agencies do. *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). It is **\*495** not surprising that questions regarding the degree to which the Act preempts state regulation have inevitably grown out of such a scheme.

The issue before us arises as a result of the request of Indiana Bell Telephone Company, Inc. (now SBC Indiana) to be allowed to enter the long-distance market. SBC is what is known as an "incumbent local exchange carrier," as defined in 47 U.S.C. § 251(h); it is also a "Bell operating company," (BOC) as defined in 47 U.S.C. § 153(4) and used in section 271 of the Act, 47 U.S.C. § 271. It is one of the Baby Bells--the descendants of the old monopolist American Telephone & Telegraph Company (AT & T). The defendant is a state agency--the Indiana Utility Regulatory Commission (IURC). The intervener defendants are other competing "local exchange carriers," as defined in 47 U.S.C. § 153(44), including AT & T. As we have previously pointed out, "[o]ne of history's ironies is that AT & T itself, reduced to a long-distance carrier ... has become one of the principal new entrants into local phone service." *AT&T Communications of Il. v. Illinois Bell Tel. Co.*, 349 F.3d 402, 404 (7th Cir.2003). At the same time, the Baby Bells--incumbent local exchange carriers, or Bell operating companies--are attempting to enter the long-distance market.

The Act sets out procedures by which companies enter both the local and long-distance markets. Sections 251 and 252 set out procedures to facilitate entry into local service markets. Section 271 sets forth the process a Bell operating company must go through in applying to the FCC for authority to provide long-distance service.

The Baby Bells have telephone lines and other infrastructure in place. In order to facilitate the entry of competing carriers into the market for local service, the Act requires that incumbent carriers provide "interconnection" and other wholesale services to the competing carriers on a nondiscriminatory basis. Sections 251 and 252 of the Act lay out a process for reaching "interconnection agreements" by which competing carriers can gain interconnection with the incumbent carrier's networks, facilities, and services. The state commissions have a role in helping to negotiate and arbitrate interconnection agreements if private negotiations fail to produce a complete agreement within a specific period of time. Section 252(a),(b). Before any interconnection agreement may be implemented, the state commission must approve it. Section 252(e)(1).

Going in the other direction, section 271 sets out the factors the FCC evaluates in deciding whether to grant the application of an incumbent local exchange carrier to enter the long-distance market. Part of the process is directed at ensuring that the applicant is facilitating competition in the market for local services before it is allowed to enter the long-distance market. To that end, under section 271(d)(2)(B), the FCC consults with the state

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

359 F.3d 493                                                                                                              Page 3
359 F.3d 493, 31 Communications Reg. (P&F) 1195
**(Cite as: 359 F.3d 493)**

commission to verify that the BOC has (1) one or more state-approved interconnection agreements with a competitor, pursuant to sections 251 and 252, or a Statement of Generally Available Terms and Conditions (SGAT) under which it will offer local service, and (2) that the interconnection agreements or the SGAT satisfies the 14-point competitive checklist set out in section 271(c)(2)(B). The state commission makes a recommendation, which is merely advisory, as to whether the BOC has satisfied the requirements. The Act reserves to the FCC the authority to decide whether to grant a section 271 application. *See MCI Telecomms. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323 (7th Cir.2000).

**\*496** In this case, SBC initiated a proceeding before the IURC to have the agency evaluate its compliance with section 271 so that the IURC could then consult with the FCC on SBC's proposed application to provide long-distance service. In evaluating SBC's compliance with section 271, IURC set up a collaborative process to allow for the participation of other interested parties, namely, competing local exchange carriers. Several of the competing carriers presented the IURC with proposed "performance assurance" or "remedy" plans to ensure SBC's performance toward the competing carriers and to provide for enforcement of the plan through liquidated damages payable to the competing carriers and assessments payable to the state of Indiana. But no agreement on such a plan was reached.

"Performance assurance" plans are not creatures of the Act. However, the FCC has said that the "existence of a satisfactory performance monitoring and enforcement mechanism is probative evidence that the BOC will continue to meet its section 271 obligations after a grant of [long-distance] authority." *In re Joint Application by BellSouth Corp. et al. for Provision of In-Region, InterLATA Servs. in Ga. and La.*, 17 F.C.C.R. 9018, ¶ 291 (May 15, 2002). It is easy to see why SBC might want to present a plan to the FCC to bolster its application. And, in fact, SBC presented a plan of its own in seeking the IURC's favorable recommendation to the FCC. It was a plan SBC had negotiated with Time-Warner Telcom of Indiana as an amendment to its interconnection agreement with that company. It would be a performance assurance plan that, if the IURC approved, would be available to all other competing local exchange carriers pursuant to section 252(I).

It was not approved, however, and instead the IURC entered an order adopting a remedy plan of its own. It asserted that Indiana state law gave it the authority to adopt the plan and to issue orders regarding the quality of service SBC provided. The IURC said that SBC was "subject to the jurisdiction and oversight" of the IURC and is obligated under Indiana law to "furnish adequate service and facilities." The order it entered was a "stand-alone" document, which the IURC said was available to new entrants into the local service market, "independent of the Sections 251/252 interconnection agreement process."

With this state of affairs, SBC moved to federal court with a complaint, alleging that the IURC order conflicted with and was preempted by sections 251, 252, and 271 of the Act and that the order exceed the IURC's authority under Indiana law. SBC filed a motion for a preliminary injunction, which by agreement was consolidated with a final hearing on the merits of the preemption claims. The parties filed cross-motions for summary judgment, and the district court granted SBC's request for injunctive relief. The IURC and a number of intervener-competing local exchange carriers now appeal that decision.

[1] As a preliminary matter, we note that at first glance it may seem disingenuous for SBC to submit its own performance assurance plan and, when that plan fails to gain approval, to say the IURC has no authority to issue its own plan, a plan to which SBC did not agree. A closer look, however, reveals the logic in SBC's position. The company was seeking approval of its application to provide long-distance service. A performance assurance plan of its own making would be its promise to meet its obligations as to local service if its application to provide long-distance service were granted. If its plan were inadequate, SBC would presumably bear the consequences in the form of the rejection of its **\*497** application. To have a plan imposed from the outside takes the application process out of SBC's hands and imposes on it unnegotiated obligations in its provision of local service.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

359 F.3d 493                                                                                                          Page 4
359 F.3d 493, 31 Communications Reg. (P&F) 1195
**(Cite as: 359 F.3d 493)**

[2] We come, then, to the issue: is the IURC order preempted by the Act? Congressional intent " 'is the ultimate touchstone' of pre-emption analysis." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978)). Congress's intent may be explicit or it may be implicit in the statute's structure and purpose. *Gade v. National Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992). The Telecommunications Act, as we have said, specifically reserves some power to the states. The issue is how much. What the IURC has done is preempted if Congress has occupied the field so thoroughly "as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608. It is also preempted where what the state has done is an obstacle to the execution of Congress's purpose or frustrates that purpose by interfering with the methods Congress selected to achieve a federal goal even when the state goal is identical to the federal goal:

> In determining whether state law stands as an obstacle to the full implementation of federal law, it is not enough to say that the ultimate goal of both federal and state law is the same. A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach the goal.

*Gade,* 505 U.S. at 103, 112 S.Ct. 2374 (citations omitted); *see also Crosby v. National Foreign Trade Council,* 530 U.S. 363, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000).

It is uncontroverted that in the Act, Congress transferred broad authority from state regulators to federal regulators, even while it left corners in which the states had a role. This role is illustrated by section 271, under which, as we have been discussing, the state commission evaluates an application and makes a recommendation to the FCC. But what the IURC has done is to parlay its limited role in issuing a recommendation under section 271, involving long-distance service, into an opportunity to issue an order, ostensibly under state law, dictating conditions on the provision of local service. The problem is that the procedure for entry into the local-service market is spelled out in some detail in sections 251 and 252. The IURC order bumps up against those procedures and thus interferes with the method the Act sets out for the application process for long-distance service in section 271 and, more dramatically, with the process for interconnection agreements for local service under sections 251 and 252.

In *Wisconsin Bell, Inc. v. Bie,* 340 F.3d 441 (7th Cir.2003), we recently considered a similar foray by the Wisconsin Public Service Commission into the sections 251-252 process. The commission ordered Wisconsin Bell to file tariffs setting out the price and other terms on which competitors would be allowed to interconnect with Wisconsin Bell's local telephone network. We found that the requirement was preempted. In fact, we said:

> The tariff procedure short-circuits negotiations, making hash of the statutory requirement that forbids requests for arbitration until 135 days after the local phone company is asked to negotiate an interconnection agreement. 47 U.S.C. § 253(b)(1).

At 445. We recognized that by providing an alternative means of obtaining interconnection, the tariff promoted the "procompetitive policy of the federal act." *498 Nevertheless, we found that to "identify the policy underlying a statute and then run with it is a dangerous method of interpretation ...." *Id.*

Although the IURC and the interveners argue that *Bie* does not apply here, we are hard-pressed to see why not. Perhaps they are, too, for their alternative argument is that we should overrule *Bie.* We decline the opportunity, not just because the case is a recent statement from us, but because we think it is rightly decided. The situation currently before us is similar and requires the same result, which we would reach with or without the helpful guidance of *Bie.* What the IURC has done is to make an end run around the Act. By issuing its freestanding order, the IURC set up baselines for interconnection agreements. The order interferes with the procedures set out in the Act, which require that the agreements be negotiated between private parties, and only when that fails are they subject to mediation by state agencies. We find that the order of the IURC is preempted by sections 251 and 252 of the Act. The judgment of the district court is therefore AFFIRMED.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

359 F.3d 493
359 F.3d 493, 31 Communications Reg. (P&F) 1195
**(Cite as: 359 F.3d 493)**

Page 5

359 F.3d 493, 31 Communications Reg. (P&F) 1195

Briefs and Other Related Documents (Back to top)

- 2003 WL 22721347 (Appellate Brief) Joint Reply Brief of Defendants-Appellants the Indiana Utility Regulatory Commission and Its Commissioners, and Intervening Defendants-Appellants Office of Utility Consumer Counselor, AT&T Communications of Indiana, Inc., TCG Indianapolis, and Worldcom, Inc. (Aug. 07, 2003)Original Image of this Document (PDF)

- 2003 WL 22721345 (Appellate Brief) Joint Opening Brief of Defendants-Appellants the Indiana Utility Regulatory Commission and Its Commissioners, and Intervening Defendants-Appellants Office of Utility Consumer Counselor, AT&T Communications of Indiana, Inc., TCG Indianapolis, and Worldcom, Inc. (Jun. 10, 2003)Original Image of this Document (PDF)

- 2003 WL 22721346 (Appellate Brief) Brief of Appellee (2003)Original Image of this Document (PDF)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed this 22nd day of November, 2004 via first class mail, postage prepaid to the following:

Tatiana D. Eirmann, Esq.
Robert S. Golden, Jr., Esq.
Office of the Attorney General
10 Franklin Square
New Britain, CT 06051

Kenneth W. Salinger, Esq.
Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199-7613

Thomas G. Rohback, Esq.
Gail L. Gottehrer, Esq.
LeBeouf, Lamb, Greene & MacRae, LLP
225 Asylum Street, 13th Floor
Hartford, CT 06103

David L. Belt, Esq.
Jacobs, Grudberg, Belt & Dow, P.C.
350 Orange Street
New Haven, CT 06503

_____
Timothy P. Jensen